**William "Billy" MITCHELL, Petitioner,**

**v.**

**Joe S. HOPPER, Warden, Respondent.**

**Civ. A. No. 478–132.**

United States District Court,
S.D. Georgia,
Savannah Division.

June 7, 1983.

Bobby L. Hill, Savannah, Ga., James S. Liebman, John C. Boger, New York City, for petitioner.

Susan V. Boleyn, Asst. Atty. Gen., Atlanta, Ga., for respondent.

## ORDER

BOWEN, District Judge.

In a memorandum and opinion dated April 1, 1982, this Court ruled on all of the issues raised in petitioner's petition except petitioner's claim that he was denied effective assistance of counsel at the sentencing phase of his trial. In that memorandum and opinion this Court noted that the find-ings of the state habeas court did not address the actions of petitioner's attorney in relation to petitioner's sentencing hearing. Accordingly, this Court held an evidentiary hearing on May 18, 1982, solely on the issue of the effectiveness of petitioner's counsel at the sentencing phase. After careful consideration, I find that petitioner's final claim must fail.[1]

The standards under which petitioner's claim of ineffective assistance of counsel at the sentencing phase must be evaluated were explicated in the *en banc* opinion in *Washington v. Strickland,* 693 F.2d 1243 (5th Cir.1982) (Unit B *en banc*). Under the court's analysis in *Washington v. Strickland,* a petitioner has the initial burden of showing two elements. First

[a]s a threshold requirement, he must show that his counsel was in fact ineffective, that counsel's conduct was not within the "range of competence demanded of attorneys in criminal cases." *McMann v. Richardson,* 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970); *Mylar v. State,* 671 F.2d 1299, 1301 (11th Cir. 1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 3570, 77 L.Ed.2d —— (1983). This is an objective assessment of whether trial counsel fell below acceptable professional standards in not advocating the underlying claim. This portion of analysis may ask, for example, whether counsel conducted a reasonable pretrial investigation and whether counsel's failure to investigate certain lines of defense was part of a strategy based on reasonable assumptions. A petitioner [then] has the additional burden of proving that his counsel's ineffectiveness caused "actual and substantial prejudice" in his case.

*Stanley v. Zant,* 697 F.2d 955, 958 (11th Cir.1983). Since I conclude that petitioner's

---

1. The petitioner argues in his reply memorandum filed February 17, 1983, that *Washington v. Strickland,* 693 F.2d 1243 (5th Cir.1982) (Unit B *en banc*) entitles him to an additional evidentiary hearing. At this Court's hearing on May 18, 1982, I was fully apprised of the type and quantity of mitigation evidence which peti-tioner claims Mr. Miller should have offered. So that the Court of Appeals can also assess the mitigation evidence proffered by the petitioner, the petitioner's motion to expand the record to include some twenty-four affidavits is hereby granted. I see no need for additional testimony.

trial counsel was not ineffective, I need not address the issue of prejudice.

In *Washington v. Strickland,* the court identified five major lines of cases involving the scope of an attorney's duty to conduct pretrial investigation. The parties to the present case agree that this case fits into the fourth category of cases discussed by the court in *Washington v. Strickland,* the category in which counsel fails to conduct a substantial investigation into all lines of defense and claims his decision to channel resources into fewer than all plausible lines of defense was based on a strategic choice. The court in *Washington v. Strickland* found that in such cases an attorney "is effective so long as the assumptions upon which he bases his strategy are reasonable and his choices on the basis of those assumptions are reasonable." 693 F.2d at 1256. Put another way, "when counsel's assumptions are reasonable given the totality of the circumstances and counsel's strategy represents a reasonable choice based upon those assumptions, counsel need not investigate lines of defense that he has chosen not to employ at trial." *Id.* at 1255. In order to assess the effectiveness of petitioner's trial attorney, Mr. Clarence A. Miller, it is necessary to understand the totality of the circumstances surrounding Mr. Miller's decisions and to identify the strategies which he formulated in light of those circumstances.[2]

In assessing Mr. Miller's conduct, it must be noted at the outset that the job with which he was faced was not an easy one. While an attorney may not throw up his hands and abrogate the duty of effective representation that he owes to his client, I cannot ignore the fact that in some cases there is simply very little that an attorney, as a practical matter, can do for his client. I find that the range of choices open to Mr. Miller in this case was limited by two significant factors. First, it is clear from the record that the evidence against the petitioner was overwhelming. Mr. Miller summarized his predicament when asked at petitioner's state habeas corpus hearing why he had not insisted on a hearing into the voluntariness of petitioner's confessions:[3]

A. For several reasons, one of which is I had followed the case from the day or so after Mr. Mitchell's arrest. I had observed his positive identification by two eye witnesses in a line-up. I had seen the confession. I had interviewed practically all of the State's witnesses. I had access both to the confessions and the Crime Lab's reports. I had seen the two weapons involved, the identification ballistics wise of the two bullets taken from the deceased, matched with the gun, the monies which were the fruits of the robbery which were identified and that coupled with the fact that Mr. Mitchell also freely told me the same things that were in the confession.

(H.T. pp. 17–18). Not only did petitioner freely admit to Mr. Miller that he had mur-

2. In assessing Mr. Miller's conduct, the Court must view his actions in the context of the information which was reasonably available to Mr. Miller at the time of petitioner's trial. Years of retrospective scrutiny will almost always lead to the discovery of flaws in the performances of even the best attorneys. It must be recognized, however, that petitioner was not entitled to perfect counsel but only to "counsel reasonably likely to render and rendering reasonably effective assistance given the totality of the circumstances." *Washington v. Strickland,* 693 F.2d 1243, 1250 (5th Cir.1982) (Unit B *en banc*).

3. A review of Herbert Carr's deposition shows that the signature on the Sylvester Police Department waiver of rights form was indeed Herbert Carr's signature. Mr. Carr simply couldn't remember being present before his regular shift after the passage of many years. Assuming that Herbert Carr did not sign the waiver of rights form at 10:30 A.M. on August 11, 1974, it should be noted that petitioner gave a subsequent confession to the Worth County Sheriff's office. There is no reason to suspect that this subsequent confession was tainted in any manner by the alleged irregularity in the confession involving Herbert Carr. I note that the Superior Court of Tattnall County and this Court have both determined that both confessions were voluntary. Mr. Miller specifically inquired into the presence of any coercion in regard to petitioner's first confession on cross-examination at petitioner's sentencing hearing and objected to the admission of that confession on voluntariness grounds. His objection was overruled.

dered Christopher Carr, shot Mrs. Carr, and forceably taken money from the convenience store where the Carrs worked, he also supplied Mr. Miller with the details of a number of other murders that he had been involved in. (H.T. p. 29; *Miller depo.* pp. 43–44). Mr. Miller was faced with the eye-witness testimony of a mother who had witnessed the brutal murder of her son and who had been shot repeatedly and unmercifully herself. Mr. Miller knew Mrs. Carr "was going to be there as a witness, taking off a wig, showing a shaved skull with scars from depressions in the skull from bullet holes in it. . . ." (Fed.T. p. 41). I find that Mr. Miller thoroughly investigated the events surrounding petitioner's arrest and subsequent confessions. Since Mr. Miller's relationship with the Worth County Sheriff's Department and City of Sylvester Police did not amount "to a cat and mouse game," (*Miller depo.* p. 42) he had every reason to believe that the officers he interviewed had given him honest, forthright answers.

Second, Mr. Miller's role was limited by the fact that petitioner was capable of playing and did in fact play a major part in making crucial decisions relating to his defense. In his deposition taken on December 4, 1978, Mr. Miller referred to petitioner as follows: "He appeared to me very intelligent, and his communication skills were just superior to me. My total impression was that he was as smart as I was." (*Mil-*

*ler depo.* 44). When asked if he considered asserting an insanity defense, Mr. Miller responded:

A. No, I did not, because I've had a great deal of study and experience in psychology and adolescent psychology in connection with my master's program and the work with public education, and I'm certainly not a degree psychologist or psychiatrist, but I feel that my ability to evaluate is probably quite good for mental disorders, and nothing about his demeanor, appearance, conversations, philosophy or anything else seemed irrational in way [sic] to me.

(*Miller depo.* 45). I find that Mr. Miller fully advised petitioner of the alternative courses of action open to him and that petitioner chose to plead guilty and to not testify during his sentencing hearing.[4] I further find that petitioner discouraged Mr. Miller from pursuing the possibility of presenting character witnesses at the sentencing phase of petitioner's trial. (*see* Fed.T. pp. 33–34). These choices made by the petitioner severely impaired Mr. Miller's ability to defend the petitioner.

Despite the difficulty of his position, I find that Mr. Miller formulated a number of strategies of defense. First, before petitioner chose to plead guilty, Mr. Miller encouraged petitioner to testify in his own defense. Although Mr. Miller thought peti-

---

4. At petitioner's state habeas corpus hearing, Mr. Miller gave his assessment of why petitioner decided to plead guilty:

Now whether there was one or a collection of several things, uh, that were primary factors in drawing him to that conclusion I cannot even say what they were and I don't know if he ever articulated one or two or three reasons for himself. I concluded from my discussions with him that among his reasons were: One, tending to deny the guilt of the fellows who were with him [sic] an effort to take the larger share of the blame or responsibility with a view toward lightening their role; two, that he did not believe there was any great likelihood that he would .. that the death sentence would ever be executed against him also in any event. I think those were .. were two of the conclusions that I drew, uh, together with another one that his attitude and demeanor at that time was al-

most one of contempt for the judicial process and that he wouldn't really bother to soil his hands with participating in it. (H.T. pp. 31–32).

At this Court's hearing Mr. Miller testified: Now the—my belief that Mr. Mitchell did not want to testify at either phase, and that my conclusion was Mr. Mitchell did not go to a jury trial and changed his plea because of his decision not to take the stand, on the guilt phase. That either for the same reasons or some other reasons, he didn't wish to testify period.

(Fed.T. p. 38). I find that petitioner made his decision not to take the stand based largely on his fear that he "might slip or divulge information that would incriminate the people who were with him" (Fed.T. p. 41) at the time of Christopher Carr's murder and during the commission of other crimes.

tioner would probably be convicted, it was Mr. Miller's opinion "that with his [petitioner's] communication skills he could portray enough to keep him from getting the death sentence." (Fed.T. p. 10). This strategy was foreclosed when petitioner chose to plead guilty and to not take the stand even during the sentencing phase of his trial. After petitioner changed his plea to guilty and it was apparent that the state had not given written notice of aggravating circumstances "prior to trial", Mr. Miller decided to rely on a legal argument based on Ga. Code Ann. § 27–2503 (Harrison 1978), Official Code of Ga.Ann. § 17–10–2 (Michie 1982). My review of Georgia law indicates that the necessity of written notice of aggravating circumstances was an unsettled issue of Georgia law and that although the argument ultimately failed, the argument was not unreasonable when made. *See Bowden v. Zant,* 244 Ga. 260, 260 S.E.2d 465 (1970); *Potts v. State,* 241 Ga. 67, 83–84, 243 S.E.2d 510 (1978); *Hewell v. State,* 238 Ga. 578, 234 S.E.2d 497 (1976). *Gates v. State,* 229 Ga. 796, 194 S.E.2d 412 (1972), which is cited by petitioner as authority for the proposition that it was clearly established in 1974 that written notice of statutory aggravating circumstances was not necessary, was decided under the old sentencing statute and dealt with prior convictions not notice of statutory aggravating circumstances. As part of his ultimate sentencing phase strategy, Mr. Miller also raised objections to the state's evidence of aggravating circumstances.[5] Specifically, Mr. Miller objected to the admission of state's Exhibit Number One, the confession taken by members of the Sylvester Police Department, after cross-examining Chief Tommy Marchman of that department concerning the voluntariness of that confession. Mr. Miller also objected to the identification of petitioner by Mrs. James Carr. Both objections were overruled. In addition to trying to exclude the state's evidence in aggravation, Mr. Miller stressed, in closing argument, petitioner's youthfulness and the lack of any formal evidence of petitioner having committed any other crimes.

■ Having identified Mr. Miller's strategies and outlined the circumstances which limited the choices open to Mr. Miller, I will now address specifically the arguments raised by petitioner through counsel to support a finding of ineffective assistance of counsel at the sentencing phase of petitioner's trial. First petitioner argues that Mr. Miller was ineffective in that he failed to interview key aggravation witnesses and to investigate or move to suppress key evidence in aggravation. I find, as did Judge Caswell in his order denying petitioner state habeas corpus relief, that Mr. Miller fully investigated the facts surrounding the murder of Christopher Carr. I specifically find that any failure of Mr. Miller to interview Herbert Carr was not unreasonable under the circumstances. Mr. Miller interviewed all of the other officers involved in taking petitioner's confessions and had no reason to suspect that Herbert Carr's testimony would add anything to or contradict the testimony of other witnesses. I also find that Mr. Miller was fully aware of the testimony that Mrs. Carr would offer and that it was reasonable to assume that there was no way that he could exclude her testimony. Mr. Miller's objections to her testimony at the sentencing phase of petitioner's trial were indeed overruled.

■ Second, petitioner raises Mr. Miller's failure to interview mitigation witnesses and to present evidence in mitigation. In this regard, it must be recognized that there is no *per se* requirement that evidence in mitigation be presented. *Stanley v. Zant,* 697 F.2d 955 (11th Cir.1983). I find that Mr. Miller questioned petitioner extensively concerning his background in an effort to probe the possibility of presenting mitigation witnesses. (Fed.T. pp. 33–34). Mr. Miller had every reason to believe that petitioner was being candid with him and

---

**5.** The state was attempting to show that the murder of Christopher Carr occurred while petitioner was engaged in the commission of another capital felony, armed robbery, and while

he was engaged in the commission of the offense of aggravated battery on Mrs. Carr. *See* Official Code of Ga.Ann. § 17–10–30(b)(2) (Michie 1982).

Mr. Miller, therefore, was able to accurately assess the type of mitigation evidence that was available. As I noted earlier, petitioner discouraged Mr. Miller from calling witnesses and the decision not to call such witnesses was made by the petitioner. To the extent that petitioner's decision was based upon Mr. Miller's advice to the effect that anything petitioner could bring forward in terms of mitigation witnesses would be outweighed by the fact of petitioner's previous conviction for attempted robbery and the circumstances surrounding the murder of Christopher Carr, I find Mr. Miller's advice to have been entirely reasonable under the circumstances. Mr. Miller was thoroughly familiar with the trial judge and reasonably could have concluded that testimony from petitioner's family, friends, teachers, counselors, coaches, and minister stating that the Billy Mitchell they knew at some time prior to the crime for which he was being sentenced was not the kind of person who could have committed that crime would not have been helpful or might even have been counter-productive. I also find that Mr. Miller could have reasonably concluded that any attempt on his part to explain away petitioner's prior conviction would have been useless or would have drawn undue attention to that conviction. It should be noted that the state did not submit evidence of petitioner's previous conviction and that Mr. Miller was able to utilize their failure to submit proof of any prior conviction in his closing argument. Although it is clear that the state could have submitted the prior sentence into evidence regardless of Mr. Miller's decision not to offer any evidence at the sentencing phase of petitioner's trial, I find it was reasonable for Mr. Miller to believe that the sentence would not be offered unless he opened the door for such rebuttal evidence. See, Stanley v. Zant, 697 F.2d 955, 965 (11th Cir.1983).

In addition to arguing that Mr. Miller should have called lay mitigation witnesses, petitioner asserts that Mr. Miller should have examined petitioner's psychiatric records and considered the possibility of a psychological evaluation of petitioner. At this Court's hearing on May 18, 1982, Mr. Miller was asked whether he had considered a mental examination of Mr. Mitchell. He responded:

Well, only possibly fleetingly in connection with my evaluation of him, his demeanor, his behavior, every impression he made on me totally negatived any possibility in my mind that he had any irrational streaks, or any unusual manifestations of anything that I could recognize. I was totally persuaded that he was a rational person, he was an intelligent person, that he had good communication skills. And, I saw nothing from my own discussions meetings with him to suggest that any evaluation by psychiatrists could have any bearing on the case.

(Fed.T. p. 13).

As noted previously in this order, Mr. Miller had some background in psychology and found Mr. Mitchell to be totally rational and fully capable of participating in his defense. As Mr. Miller noted in his deposition "one may adopt a premise that anybody who is willing to kill somebody else is mentally deranged." (Miller depo. at 95). This Court, however, is unwilling to adopt the premise that a psychological evaluation is required in every death penalty case. Mr. Miller had ample opportunity to assess petitioner's state of mind, and I find that Mr. Miller's conclusion that further investigation into petitioner's mental state would be fruitless was entirely reasonable under the circumstances.

Third, petitioner argues that Mr. Miller's representation was ineffective because he failed to research the law. Specifically, petitioner cites Mr. Miller's failure to research the clear statutory law regarding the admissibility of prior convictions in capital sentencing trials in Georgia. The petitioner points to Mr. Miller's statements at this Court's hearing on May 18, 1982, which indicate that it was his understanding that the prior conviction could not have been presented if Mr. Mitchell had not taken the stand or if, as actually occurred, the defense put on no evidence at all. (Fed.T. pp. 56, 60). As petitioner notes, these conclusions

were incorrect. Mr. Miller's statements must, however, be taken in context and evaluated in light of his strategy at the sentencing phase. Mr. Miller's position was that since the state had not given him proper notice prior to trial of statutory aggravating circumstances, that no evidence of such circumstances could be offered. The issue of petitioner's prior conviction was irrelevant to Mr. Miller's argument. As Mr. Miller put it: "I had no concern about that. If you did away with the statutory aggravating circumstance his sentence was automatic, life imprisonment. I didn't care whether it came in, for that purpose." (Fed.T. p. 57). Mr. Miller's following testimony is also extremely significant:

Q. Was there any doubt in your mind that the District Attorney would have tendered that into evidence if you had put evidence of Mr. Mitchell's character in?

A. I certainly believe that he would. And, I don't have any reason to doubt that he would.

Q. And, you did not put Mr. Mitchell on the stand and it was not introduced into evidence. Is that correct?

A. That is my recollection. I believe that is correct. However, I would go a step further and say this: that had Mr. Mitchell told me he wanted to address the Court, I would not have asked him not to, even in face of that document. (Fed.T. p. 61).

I find that any misconception that Mr. Miller had concerning the law on the admissibility of prior convictions did not affect petitioner's decision not to take the stand. The record shows that Mr. Miller consistently encouraged petitioner to testify on his own behalf. I also find that any misconception that Mr. Miller had did not affect the decision to call no mitigation witnesses. As I noted earlier, these witnesses were not called as the result of a choice made by the petitioner. Moreover, Mr. Miller's opinion that any mitigation character evidence that he could have mustered would have been neutralized by petitioner's prior sentence was not unreasonable under the circumstances of this case.

Petitioner also cites Mr. Miller's failure to research the clear statutory law regarding the requirement of actual—but not written—notice of aggravating circumstances. As I have previously noted, the law of Georgia was not clear on this point at the time of petitioner's trial. Given the language of Ga.Code Ann. § 27–2503 (Harrison 1978), Official Code of Ga. 17–10–2 (Michie 1982)[6] and the state of Georgia law in 1974, I cannot find that Mr. Miller's reliance on a strict construction of the statutory notice requirement amounted to ineffective assistance. "[T]actical decisions do not render assistance ineffective simply because in retrospect it is apparent that counsel chose the wrong course." *Baldwin v. Blackburn,* 653 F.2d 942, 946 (5th Cir.1981); *see Beckham v. Wainwright,* 639 F.2d 262, 265 (5th Cir. 1981). Under the circumstances, Mr. Miller's plan to raise the technical issue at trial and to pursue it vigorously on appeal was entirely reasonable.

**6.** The relevant language is as follows:

(a) Except in cases in which the death penalty may be imposed, upon the return of a verdict of "guilty" by the jury in any felony case, the judge shall dismiss the jury and shall conduct a presentence hearing at which the only issue shall be the determination of punishment to be imposed. In the hearing the judge shall hear additional evidence in extenuation, mitigation, and aggravation of punishment, including the record of any prior criminal convictions and pleas of guilty or nolo contendere of the defendant, or the absence of any prior conviction and pleas, *provided that only such evidence in aggravation as the state has made known to the defend-*

*ant prior to his trial shall be admissible.* The judge shall also hear argument by the defendant or his counsel and the district attorney, as provided by law, regarding the punishment to be imposed. The district attorney *shall open and the defendant or his counsel* shall conclude the argument. Upon the conclusion of the evidence and arguments, the judge shall impose the sentence or shall recess the trial for the purpose of taking the sentence to be imposed under advisement. The judge shall fix a sentence within the limits prescribed by law. (emphasis supplied)

Ga.Code Ann. § 27–2503 (Harrison 1978), Official Code of Ga. 17–10–2 (Michie 1982).

Petitioner's final argument is that Mr. Miller was ineffective because he did not seek the advice or assistance of other attorneys before conducting petitioner's trial under the capital-sentencing statute which was enacted by the Georgia legislature in 1973 in response to *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). I find that at the time of petitioner's trial, Mr. Miller had represented criminal defendants in over 100 cases, including 30 murder cases, in the seven years he had been a member of the Georgia bar. It also appears that Mr. Miller had known the trial judge for fifteen years and had tried numerous cases and entered numerous pleas before him. Given his range of experience, I cannot say that it was unreasonable for Mr. Miller to rely on his own judgment.

In summary, after a thorough review of the record in this case, I must conclude that the assumptions upon which Mr. Miller based his strategy were reasonable given the totality of the circumstances present in this case and that the choices which Mr. Miller made based on those assumptions were reasonable. Accordingly, I find petitioner's claim of ineffective assistance of counsel at the sentencing phase of trial to be without merit. Since all of the petitioner's other grounds for habeas corpus relief previously have been found to be without merit, the petitioner's application for a writ of habeas corpus is hereby DENIED.