

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-25-2004

# Rompilla v. Horn

Precedential or Non-Precedential: Precedential

Docket No. 00-9005

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Rompilla v. Horn" (2004). *2004 Decisions.* Paper 939.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/939

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

00-9005/9006

_____

RONALD ROMPILLA

v.

MARTIN HORN, COMMISSIONER,
PENNSYLVANIA DEPARTMENT OF
CORRECTIONS

Martin Horn,

Appellant/Cross-Appellee

_____

SUR PETITION FOR REHEARING

_____

Present: SCIRICA, <u>Chief Judge</u>, SLOVITER, NYGAARD,
ALITO, ROTH, McKEE, BARRY, AMBRO, FUENTES, SMITH,
and CHERTOFF <u>Circuit Judges</u>, and STAPLETON, <u>Senior Circuit Judge</u>*

The petition for rehearing filed by appellee/cross appellant in the above entitled

case having been submitted to the judges who participated in the decision of this court

and to all the other available circuit judges of the circuit in regular active service, and no

judge who concurred in the decision having asked for rehearing, and a majority of the

circuit judges of the circuit in regular active service not having voted for rehearing by the

_____
*Voted as to panel rehearing only.

court en banc, the petition for rehearing is denied. Judges Sloviter and McKee would have granted rehearing en banc for the reasons set forth in the dissent. Judges Nygaard, Ambro and Smith would have granted rehearing en banc.

By the Court,

/s/ Samuel A. Alito, Jr.
Circuit Judge

DATED: 25 February 2004

**OPINION SUR DENIAL OF REHEARING**

NYGAARD, J.,

I share the concerns eloquently expressed by my colleague, Judge Sloviter, and agree fully with the analysis she offers in her dissenting opinion. Had I been on the panel, I would have joined her to form a majority. Now on petition for en banc review, however, I wish only to add my thoughts to hers why I firmly believe we should rehear this appeal en banc. The Rules provide that rehearing en banc is appropriate when a case "involves a question of exceptional importance." Fed. R. App. P. 35(a). To me, this case raises such a question.[1] The issue before us implicates the most fundamental and important of all rights — to be represented by effective counsel. All other rights will turn to ashes in the hands of a person who is without effective, professional, and zealous

---

[1]Indeed, I suggest that every death case in which a divided panel of the court reverses a well-reasoned decision of the District Court that granted a writ of habeas corpus, should raise in our minds "a question of exceptional importance." As the Court has said, "death is different." *See, e.g., Wiggins v. Smith,* 123 S.Ct. 2527, 2554 (2003).

representation when accused of a crime. In my view, counsel here failed in all three areas.

Over seventy years ago, the United States Supreme Court reviewed a sensational criminal trial. Nine poor, young African American men were facing death sentences. They had been convicted of raping two white women in Alabama. The issue before the Supreme Court was simple: were the defendants entitled to the effective assistance of counsel as part of their constitutional right to due process? In a landmark ruling, Justice Sutherland famously declared that defendants in capital cases have the right to the "guiding hand of counsel at every step in the proceedings against [them]." *Powell v. Alabama*, 287 U.S. 45, 69 (1932); *see also* Dan T. Carter, Scottsboro: A Tragedy of the American South, 5-6 (special ed., The Notable Trials Library 2000) (giving age range of Scottsboro defendants as 13-20). I am deeply concerned that Justice Sutherland's simple and eloquent idea of effective legal representation may not be the reality of our present-day jurisprudence. All too often, the "guiding hand" is either inexperienced, unmotivated or uncaring, and offers insufficient guidance to the indigent capital defendant.

The need for reform of the "delivery system" of counsel to indigent capital defendants is well-known, and its failures are, unfortunately, no longer either surprising or shocking. Reports continually surface highlighting the subpar performances of capital defense counsel. *See, e.g.,* James S. Liebman et al., *A Broken System: Error Rates in Capital Cases*, 1973-1995, at ii (2000), *available at* http://www.justice.policy.net/jpreport/index.html (last visited Feb. 13, 2004). Too often

appointed trial counsel lack the experience, training or financial resources necessary to adequately represent those defendants on trial for their life who face the powerful forces of the government. *See, e.g.,* Stephen B. Bright, *Counsel for the Poor: The Death Sentence Not for the Worst Crime but for the Worst Lawyer*, 103 YALE L. J. 1835, 1862 (1994). In my view, any level of inadequate representation not only undermines the reliability that must be the foundation of our adversarial process, but also heightens the risk that defendants will be convicted and sentenced to death despite their actual or incremental innocence.[2]

Ideally, the standard set out in *Strickland v. Washington*, 466 U.S. 668 (1984), should act as a safety net to correct injustices caused by ineffective counsel. I view the results as less than ideal. I begin with the Supreme Court instruction to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. I submit, however, that where the sanction, once executed, is irreversible, the presumption must be defined narrowly – not widely. Unfortunately, in the twenty years since the standard was set out in *Strickland,* it has degraded. The range of what is deemed "effective" has widened to, in my view, an astonishing spectrum of shabby lawyering. Counsel has been deemed "effective" despite, for example, sleeping through a portion of the case. *See McFarland v. Texas*, 928 S.W.2d 482, 505 (Tex. Crim. App. 1996) (recognizing that defense counsel slept through parts of defendant's capital

---

[2] What I refer to as "incremental innocence" represents the degree of guilt found in excess of one's actual culpability, resulting in a punishment imposed that exceeds that which is indicated by their participation in the crime.

trial, but deeming him "effective.").[3]  Other shocking examples include cases where

counsel was intoxicated during the capital trial, s*ee Haney v. Alabama*, 603 So.2d 368,

377-78 (Ala. Crim. App. 1991); and cases where counsel presented no evidence

whatsoever during the sentencing phase, *see Mitchell v. Kemp*, 762 F.2d 886, 888 (11th

Cir. 1985).  In my view, the majority opinion in this case infuses our jurisprudence with

this degraded standard.

These disturbing examples of inept lawyering in capital cases have propelled

professional organizations to act.  The American Bar Association has promulgated

"Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases."

These Guidelines upgrade the minimum standard from "quality" legal representation to

"high quality" legal representation.  *See American Bar Association Guidelines for the*

*Appointment and Performance of Defense Counsel in Death Penalty Cases*, 31 HOFSTRA

L. REV. 913, 939 (2003) (outlining the 2003 Revisions to the Guidelines).  Included in

those guidelines is the requirement that the capital defendant should "receive the

assistance of all expert, investigative, and other ancillary professional services . . .

appropriate . . . at all stages of the proceedings."  *Id.* at 952.  Here, in my view, counsel's

failure to conduct even the most rudimentary investigation into Rompilla's background

falls short of being "effective" representation.  I believe this level of representation

violates not only the standards set out by the American Bar Association, but by accepting

---

[3]Mr. McFarland's counsel later justified his actions by testifying that he "customarily takes a short nap in the afternoon."  Henry Weinstein, *A Sleeping Lawyer and a Ticket to Death Row*, L.A. TIMES (Valley Ed.), July 15, 2000, at A1.

it as adequately effective, we continue to degrade the standard set out in *Strickland,* and ignore the sentiments expressed by Justice Sutherland.

I believe that a policy of this importance should not be decided by a divided panel of the court. This court, which has traditionally been in the van, and a steadfast guardian of constitutional rights, should have taken this opportunity to convene en banc to consider and carefully define the breadth of *Strickland's* presumption, and set forth a jurisprudentially sound and humanitarian threshold for what constitutes effective representation.

Sloviter, J., and McKee, J., join in this opinion.