957 So.2d 492 (2004)
Fredrick D. WOODS
v.
STATE of Alabama.
CR-02-1959.
Court of Criminal Appeals of Alabama.
August 27, 2004.
Rehearing Denied October 22, 2004.
*500 Joseph G. Block, Brian L. Flack, and Damon W.D. Wright, Washington, D.C.; and Michael P. Hanle, Birmingham, for appellant.
William H. Pryor, Jr., and Troy King, attys. gen., and Stephen Shows, asst. atty. gen., for appellee.
BASCHAB, Judge.
On August 14, 1997, the appellant, Fredrick D. Woods, was convicted of capital murder for the killing of Roaul Rush Smith. The murder was made capital because he committed it during the course of a robbery. See § 13A-5-40(a)(2), Ala. Code 1975. On August 15, 1997, by a vote of 10-2, the jury recommended that he be sentenced to death. The trial court followed the jury's recommendation and sentenced the appellant to death. We affirmed his conviction and sentence, see Woods v. State, 789 So.2d 896 (Ala.Crim. App.1999); the Alabama Supreme Court affirmed his conviction and sentence, see Ex parte Woods, 789 So.2d 941 (Ala.2001); and the United States Supreme Court denied his petition for certiorari review, see Woods v. Alabama, 534 U.S. 831, 122 S.Ct. 77, 151 L.Ed.2d 41 (2001). This court *501 issued a certificate of judgment on January 30, 2001.
On July 26, 2002, the appellant filed a Rule 32 petition, challenging his conviction, and the State responded. On November 16, 2002, he filed an amended petition. On December 19, 2002, the circuit court conducted a pretrial hearing to narrow the issues and eliminate any claims that were precluded, and it ordered the parties to submit proposed orders by January 31, 2003. Instead, on January 24, 2003, the appellant attempted to file a second amended petition. However, the State objected, and the circuit court struck the second amended petition. Afterward, the circuit court summarily dismissed the petition. This appeal followed.
On direct appeal, we summarized the relevant facts of the case as follows:
"On September 10, 1996, police were called to the Mountain Top Beverage Store, a convenience store near Ashville, where they discovered the body of its owner, Rush `Doc' Smith, slumped behind the counter, dead from a gunshot wound to the head. Testimony indicated that between $200 and $300 was missing from the cash register and that several bottles of liquor had also been taken from the store. An autopsy revealed that Smith received a single gunshot wound to the right side of his head. Forensic testing showed that the bullet, which had fragmented upon impact, was a .38 caliber.
"Louis Bernard Jones testified that he, Woods, and Richard Foreman, were driving around in his Fort LTD automobile and smoking crack cocaine on the evening of September 10 when Woods asked to borrow Jones's car so that he could go to a local convenience store to buy some antacid for his girlfriend. Jones testified that he always kept a loaded .38 caliber revolver under the driver's seat of his car. Woods and Foreman left, and Woods was driving. Jones further testified that when Woods and Foreman returned, approximately one hour to an hour and a half later, Woods was acting unusual and was `moping.' Jones said that at some point in their conversation he asked Woods if he had shot a man with his gun and he replied that he had. Testimony established that after borrowing Jones's car, the two went to the Rainbow Food Mart in Ashville where Woods purchased two pairs of gloves. They left the store around 9:30 p.m. Police were called to the Mountain Top Beverage Store at around 11:40 p.m.
"Woods confessed to murdering Smith; he handwrote a three-page confession. He wrote that he was smoking crack cocaine and that he needed cash to buy more drugs when he thought of Smith. Woods wrote that he pointed the gun at Smith, closed his eyes, and when he opened them Smith was on the floor. Woods then went around the corner and took the money out of the register.
"Woods also led police to where he had disposed of the gloves he wore during the robbery-murder. Further, DNA testing done on the bloodstain found on the shirt that Woods was wearing at the time of the murder matched Smith's blood."
Woods, 789 So.2d at 901 (footnote omitted).
The appellant raises several arguments, including claims that his attorneys rendered ineffective assistance during the proceedings. In reviewing the circuit court's rulings on the appellant's arguments, we apply the following principles:
"`"[T]he plain error rule does not apply to Rule 32 proceedings, even if the case involves the death sentence." Thompson v. State, 615 So.2d 129 (Ala.Cr.App. *502 1992).' Cade v. State, 629 So.2d 38, 41 (Ala.Crim.App.1993), cert. denied, [511] U.S. [1046], 114 S.Ct. 1579, 128 L.Ed.2d 221 (1994).
"In addition, `[t]he procedural bars of Rule 32 apply with equal force to all cases, including those in which the death penalty has been imposed.' State v. Tarver, 629 So.2d 14, 19 (Ala.Crim.App. 1993)."
Brownlee v. State, 666 So.2d 91, 93 (Ala. Crim.App.1995).
"To prevail on a claim of ineffective assistance of counsel, the defendant must show (1) that his counsel's performance was deficient and (2) that he was prejudiced as a result of the deficient performance. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
"`The appellant must show that his counsel's performance was unreasonable, considering all of the attendant circumstances. . . . "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 690, 104 S.Ct. at 2066.'
"Duren v. State, 590 So.2d 360, 362 (Ala. Cr.App.1990), aff'd, 590 So.2d 369 (Ala. 1991), cert. denied, [503] U.S. [974], 112 S.Ct. 1594, 118 L.Ed.2d 310 (1992).
"When this court is reviewing a claim of ineffective assistance of counsel, we indulge a strong presumption that counsel's conduct was appropriate and reasonable. Luke v. State, 484 So.2d 531, 534 (Ala.Cr.App.1985). The burden is on the appellant to show that his counsel's conduct was deficient. Luke.

"`Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.'
"Strickland, 466 U.S. at 689, 104 S.Ct. at 2065-66. (Citations omitted.) Ex parte Lawley, 512 So.2d 1370, 1372 (Ala.1987).
"Initially we must determine whether counsel's performance was deficient. We must evaluate whether the action or inaction of counsel of which the petitioner complains was a strategic choice. `Strategic choices made after a thorough investigation of relevant law and facts are virtually unchallengeable. . . .' Lawley, 512 So.2d at 1372. This court must avoid using `hindsight' to evaluate the performance of counsel. We must evaluate all the circumstances surrounding the case at the time of counsel's actions before determining whether counsel rendered ineffective assistance. Falkner v. State, 586 So.2d 39 (Ala.Cr.App.1991)."
*503 Hallford v. State, 629 So.2d 6, 8-9 (Ala. Crim.App.1992).
"In determining whether a defendant has established his burden of showing that his counsel was ineffective, we are not required to address both considerations of the Strickland v. Washington test if the defendant makes an insufficient showing on one of the prongs. Id. at 697, 104 S.Ct. at 2069. In fact, the Court explained that `[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.' Id. We defer to this guidance and address the `prejudice' prong, for `[w]ith respect to the prejudice component, the lack of merit of [Thomas's] claim is even more stark.' Id. at 699, 104 S.Ct. at 2070."
Thomas v. State, 511 So.2d 248, 255 (Ala. Crim.App.1987) (footnote omitted).
"Furthermore, to render effective assistance, an attorney is not required to raise every conceivable constitutional claim available at trial and on appeal. Holladay v. State, 629 So.2d 673 (Ala.Cr. App.1992), cert. denied, 510 U.S. 1171, 114 S.Ct. 1208, 127 L.Ed.2d 555 (1994); McCoy v. Lynaugh, 874 F.2d 954, 965-66 (5th Cir.1989). Rather, counsel must be given some discretion in determining which claims possibly have merit, and thus a better chance of success, and which claims do not have merit, and thus have little chance of success. Heath v. State, 536 So.2d 142 (Ala.Cr.App.1988); Smith v. Murray, 477 U.S. 527, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986); Engle v. Isaac, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982)."
Davis v. State, 720 So.2d 1006, 1014 (Ala. Crim.App.1998). Finally,
"[t]he purpose of ineffectiveness review is not to grade counsel's performance. See Strickland [v. Washington], [466 U.S. 668,] 104 S.Ct. [2052] at 2065 [(1984)]; see also White v. Singletary, 972 F.2d 1218, 1221 (11th Cir.1992)(`We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.'). We recognize that `[r]epresentation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another.' Strickland, 104 S.Ct. at 2067. Different lawyers have different gifts; this fact, as well as differing circumstances from case to case, means the range of what might be a reasonable approach at trial must be broad. To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. But, the issue is not what is possible or `what is prudent or appropriate, but only what is constitutionally compelled.' Burger v. Kemp, 483 U.S. 776, 107 S.Ct. 3114, 3126, 97 L.Ed.2d 638 (1987).
". . . .
"Because the reasonableness of counsel's acts (including what investigations are reasonable) depends `critically' upon `information supplied by the [petitioner]' or `the [petitioner]'s own statements or actions,' evidence of a petitioner's statements and acts in dealing with counsel is highly relevant to ineffective assistance claims. Strickland, 104 S.Ct. at 2066. `[An] inquiry into counsel's conversations with the [petitioner] may be critical to a proper assessment of counsel's investigation decisions, just as it may be critical to a proper assessment of counsel's other litigation decisions.' Id. (`[W]hen a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations *504 may not later be challenged as unreasonable.')."
Chandler v. United States, 218 F.3d 1305, 1313-19 (11th Cir.2000) (footnotes omitted).

I.
The appellant's first argument is that the circuit court erred in summarily dismissing his amended petition at the pleading stage. Specifically, he appears to contend that the circuit court should have conducted an evidentiary hearing so he could present evidence to prove his claims. We addressed and rejected a similar argument in Coral v. State, 900 So.2d 1274, 1279-84 (Ala.Crim.App.2004), as follows:
"Coral argues that the circuit court erred in dismissing his ineffective-assistance-of-counsel claims without first allowing him the opportunity to prove his claims. He contends that he is entitled to an evidentiary hearing so that he can develop these claims.
". . . .
"After the petition was filed, the State moved for partial dismissal arguing that `Coral has failed to meet the burden placed on him by Rule 32.6(b) of providing "full disclosure of the factual basis" on the claims of ineffective assistance of counsel.' As a result of the State's motion, the circuit court granted Coral 60 days to amend his petition to comply with the requirements of Rule 32.6(b), Ala. R.Crim. P. On the last possible day Coral filed an amended petition. The claims of ineffective assistance of counsel in this petition were virtually identical to those claims made in the original petition. The State again moved for a partial dismissal. On July 1, 1996, the circuit court held a hearing on the State's motion. A transcript of the hearing shows that the circuit court dismissed all but two of the ineffective-assistance-of-counsel claims for failure to comply with the provisions of Rule 32.6(b), Ala. R.Crim. P. . . .
"Rule 32.6(b), Ala. R.Crim. P., addresses the requirements for the contents of a Rule 32 petition and states:
"`The petition must contain a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds. A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceedings.'
"As this Court stated in Boyd v. State, 913 So.2d 1113 (Ala.Crim.App.2003):
"`"Rule 32.6(b) requires that the petition itself disclose the facts relied upon in seeking relief." Boyd v. State, 746 So.2d 364, 406 (Ala.Crim. App.1999). In other words, it is not the pleading of a conclusion "which, if true, entitle[s] the petitioner to relief." Lancaster v. State, 638 So.2d 1370, 1373 (Ala.Crim.App.1993). It is the allegation of facts in pleading which, if true, entitles a petitioner to relief. After facts are pleaded, which, if true, entitle the petitioner to relief, the petitioner is then entitled to an opportunity, as provided in Rule 32.9, Ala. R.Crim. P., to present evidence proving those alleged facts.

"`Thus, a Rule 32 petitioner is not automatically entitled to an evidentiary hearing on any and all claims raised in the petition. To the contrary, Rule 32.7(d), Ala. R.Crim. P., provides for the summary disposition of a Rule 32 petition
"`"[i]f the court determines that the petition is not sufficiently specific [in violation of Rule 32.6(b)], or is precluded [under Rule 32.2, Ala. R.Crim. P.], or fails to state a claim, *505 or that no material issue of fact or law exists which would entitle the petitioner to relief under this rule and that no purpose would be served by further proceedings. . . . "'
"913 So.2d at 1125-26.
"Certainly, Coral was not obliged to prove his allegations in his Rule 32 petition; however, he was required to comply with the provisions of Rule 32.6(b), Ala. R.Crim. P. This is not a situation where the circuit court dismissed the petition without allowing Coral to amend his claims. Coral was allowed to file an amended petition but failed to comply with the circuit court's instructions.
"When discussing the specificity requirements of Rule 32.6(b), Ala. R.Crim. P., as applied to ineffective-assistance-of-counsel claims, this Court has stated:
"`[W]e conclude that [the petitioner] failed to plead sufficient facts with respect to any of the claims to warrant any further proceedings.
"`In Strickland v. Washington, 466 U.S. 668, 687 (1984), the United States Supreme Court articulated two criteria that must be satisfied to show ineffective assistance of counsel. A defendant has the burden of showing (1) that his counsel's performance was deficient and (2) that the deficient performance actually prejudiced the defense. To prove prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. Furthermore, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689.
"`Rule 32.3, Ala. R.Crim. P., states that "[t]he petitioner shall have the burden of pleading and proving by a preponderance of the evidence the facts necessary to entitle the petitioner to relief." Rule 32.6(b), Ala. R.Crim. P., states that "[t]he petition must contain a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds. A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceedings."
"`"An evidentiary hearing on a [Rule 32] petition is required only if the petition is `meritorious on its face.' Ex parte Boatwright, 471 So.2d 1257 (Ala.1985). A petition is `meritorious on its face' only if it contains a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the facts relied upon (as opposed to a general statement concerning the nature and effect of those facts) sufficient to show that the petitioner is entitled to relief if those facts are true. Ex parte Boatwright, supra; Ex parte Clisby, 501 So.2d 483 (Ala.1986)."
"`Moore v. State, 502 So.2d 819, 820 (Ala.1986).
"`Although [the petitioner] specifically identified the acts or omissions on the part of his trial counsel that he believed constituted deficient performance, he failed to include in his petition any facts tending to indicate how those acts or omissions prejudiced his defense. He did not include specific facts regarding the crimes or the evidence *506 introduced at trial, and he did not even state in his petition what his defense was. Even accepting all of the allegations in his petition as true, we cannot say whether [the petitioner] is entitled to relief. Therefore, [the petitioner] has not provided "full disclosure of the factual basis" of his claims necessary to satisfy the specificity requirements of Rule 32.6(b), Ala. R.Crim. P., and the pleading requirements of Rule 32.3, Ala. R.Crim. P. Accordingly, the circuit court properly denied his claims of ineffective assistance of trial counsel without an evidentiary hearing.'
"Bracknell v. State, 883 So.2d 724, 728 (Ala.Crim.App.2003) (footnote omitted).
"We have carefully examined Coral's petition. We agree with the circuit court that these claims were not factually sufficient. Indeed, how is the State to defend against the general claim that counsel failed to prepare or investigate the case, without any specific facts to support the allegation? The intent in adopting Rule 32.6(b), Ala. R.Crim. P., was to ensure that one party did not obtain an unfair advantage over the other partyto place both the State and the petitioner on a level playing field. Coral's petition failed to comply with the provisions of Rule 32.6(b), Ala. R.Crim. P., and gave the State no ability to defend Coral's general claims.
". . . .
"The circuit court did not err in dismissing the majority of Coral's ineffective-assistance-of-counsel claims because they failed to comply with the specificity requirements of Rule 32.6(b), Ala. R.Crim. P."
Furthermore, Rule 32.7(d), Ala. R.Crim. P., provides, in pertinent part:
"If the court determines that the petition is not sufficiently specific, or is precluded, or fails to state a claim, or that no material issue of fact or law exists which would entitle the petitioner to relief under this rule and that no purpose would be served by any further proceedings, the court may . . . dismiss the petition. . . . "
We have carefully examined the appellant's petition and his first amended petition. Based on that review, we conclude that the circuit court did not err in summarily dismissing his petition. For the reasons set forth herein, the appellant was not entitled to relief on the claims he pursues on appeal. Our review also indicates that he was not entitled to relief on the remaining claims, which he abandoned on appeal, because they were precluded pursuant to the provisions of Rule 32.2(a), Ala. R.Crim. P., and/or because they were not sufficiently pled. Therefore, the circuit court did not err in summarily dismissing the appellant's petition. See Rule 32.7(d), Ala. R.Crim. P.

II.
The appellant's second argument is that the circuit court erred in summarily dismissing his juror misconduct claims. Specifically, he contends that he is entitled to relief because, during the voir dire proceedings, G.P. did not reveal that she had previously been the victim of a robbery and that, for years, she was frightened when she was in the presence of black men; T.D. did not reveal that she would automatically vote for the death penalty because of her opposition to prison sentences; and M.W. did not disclose that he had previously served as a juror in two prior criminal trials in which the defendants were convicted and did not disclose that he had previously had business dealings with the victim. With regard to these juror misconduct claims, the circuit court found:

*507 "In Ex parte Dobyne, 805 So.2d 763, 767-768 (Ala.2001), the Alabama Supreme Court reaffirmed its holding in Ex parte Pierce, 851 So.2d 606 (Ala.2000), regarding the pleading requirements of a postconviction claim involving juror misconduct. In Ex parte Pierce, the Supreme Court held that while a claim of juror misconduct brought under Rule 32.1(a), Ala. R.Crim. P., does not have to meet the requirements of newly discovered evidence under Rule 32.1(e), Ala. R.Crim. P., a petitioner does have to show that `his claim could not have been raised at trial or on direct appeal.' Ex parte Pierce, 851 So.2d at 614. The Supreme Court specifically held that `Rule 32.2(a)(3) and (5) would preclude Pierce's claim [of juror misconduct] if it could have been raised at trial or on appeal.' Ex parte Pierce, 851 So.2d at 614.
"In Ex parte Pierce, the Supreme Court found that the basis of Pierce's juror misconduct claim was discovered during postconviction interviews with jurors. The Supreme Court held that:
"`Pierce's claim was cognizable as long as he established that the information was not known, and could not reasonably have been discovered, at trial or in time to raise the issue in a motion for new trial or on appeal.'
"Ex parte Pierce, 851 So.2d at 616.
"Woods contends that three jurors committed misconduct. The only difference in Part V of Woods' original petition and Part V of his amended petition is that in his amended petition, Woods contends that the information regarding the named jurors was `only recently . . . learned' by his Rule 32 counsel. (Woods's amended petition at p. 29) In the cases of [G.P.] and [T.D.], Woods fails to state in his amended petition the source of his information supporting these claims. Regarding [M.W.], Woods contends he learned of juror misconduct `during a recent interview [with] [M.W.].' (Woods' petition at p. 31) Woods fails, however, to state in his amended petition when the instances of alleged juror misconduct were actually discovered, or, most importantly, proffer any facts that, if true, would establish that these claims could not have reasonably been discovered at trial or in time to raise the issue in a motion for new trial or on direct appeal. There is nothing in the record indicating that the trial court prevented Woods's trial counsel from interviewing members of the jury following their verdict and sentencing recommendation. Almost six weeks elapsed between the [jury's] recommended sentence and the trial court's imposition of sentence. Trial counsel then had 30 days from the pronouncement of sentence to file a motion for new trial in which Woods' counsel could have included claims of juror misconduct.
"In its answer to Woods's original petition, the State pleaded that these claims were precluded under Rules 32.2(a)(3) and (5). Thus, the burden then shifted to Woods to disprove that these procedural bars existed. Rule 32.3, Ala. R.Crim. P. Woods states no facts in his amended petition that, if true, would establish his claims of juror misconduct are not procedurally barred. See Rule 32.6(b), Ala. R.Crim. P. (requiring a petition contain a specific statement of grounds for relief, `including full disclosure of the factual basis of those grounds'); see also Ex parte Clisby, 501 So.2d 483, 488 (Ala.1986) (holding that the summary dismissal of a death row inmate's postconviction petition was proper where petition `[was] not sufficient on its face to enable the trial court to determine whether the petitioner is entitled to any relief.') *508 Therefore, these claims are summarily dismissed by the Court. Rules 32.2(a)(3) and (5), Ala. R.Crim. P."
(C.R. 764-66.) The record supports the circuit court's findings, and we adopt them as part of this opinion. Because they were precluded, the circuit court properly summarily dismissed the appellant's juror misconduct claims. See Rule 32.7(d), Ala. R.Crim. P.

III.
The appellant's third argument is that the circuit court erred in summarily dismissing his Brady claims. Specifically, he contends that he is entitled to relief because the State allegedly concealed
1) evidence that the law enforcement officers who interrogated Jones tore up at least two written statements that were allegedly favorable to him;
2) evidence that it had made deals with Jones in exchange for his testimony and evidence concerning Jones' prior convictions;
3) evidence that he did not reinitiate contact with law enforcement officers after he had invoked his right to remain silent and evidence that law enforcement officers threatened him to coerce his confession;
4) evidence that law enforcement officers coerced him to confess and coerced Jones to testify falsely against him;
5) allegedly exculpatory evidence about suspects Emory Morton and Kevin Mark Smith; and
6) evidence regarding the State's flawed forensic testing and testimony.
With regard to these claims, the circuit court found:
"`To prove a Brady violation, a defendant must show (1) that the prosecution suppressed the evidence, (2) that the evidence was of a character favorable to the defense, and (3) that the evidence was material.' Hamilton v. State, 677 So.2d 1254, 1260 (Ala.Crim.App.1995). In relation to the disclosure of evidence, the United States Supreme Court has held:
"`Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine the confidence in the outcome.'
"United States v. Bagley, 105 S.Ct. 3375, 3383 (1985). Further, the Alabama Court of Criminal Appeals has held that a Brady claim raised in a Rule 32 petition is procedurally barred under Rule 32.2(a)(3) and (a)(5) where the petitioner fails to assert that the claim was based on newly discovered evidence. See, Williams v. State, 782 So.2d 811, 818 (Ala.Crim.App.2000).
". . . .
"II.B.(iv). Claim that the State failed to disclose the criminal [history] of [witness] Lewis Jones . . .
"Regarding any failure by the State to disclose Jones's prior criminal history, the Court notes that, at the time of the crime, Jones was a juvenile. If Jones had a prior criminal history, it could not have been used to impeach his testimony. Rule 609(d), Ala. R. Evid. The Court finds that this allegation fails to establish a Brady violation; therefore, it is summarily dismissed by the Court.
". . . .
"II.B.(v). Claim that the State failed to disclose full and complete information about criminal activity and background of Emory Morton, Jr., and Kevin Mark Smith

"The trial record indicates that trial counsel was aware that Morton and *509 Smith were suspects in the robbery/murder. In fact, during the defense's case-in-chief, trial counsel introduced evidence that Smith had made a statement about robbing and killing the victim and then fleeing the State. (R. 678-681) Moreover, the Court finds that even if the State failed to disclose evidence concerning Morton and Smith, Woods would not be entitled to any relief because `there was no reasonable probability that if the evidence of the other suspects had been disclosed the result of the proceeding would have been different.' Johnson v. State, 612 So.2d 1288, 1293 (Ala.Crim.App.1992). The Court finds that these allegations fail to establish Brady violations; therefore, they are summarily dismissed by the Court.
"II.B.(vi). Claim that the State failed to disclose information concerning the voluntariness of Woods's statement to law enforcement

". . . The Court has previously reviewed these allegations and found that they do not meet the requirements of newly discovered evidence. . . . Because these allegations do not meet the requirements of newly discovered evidence, they are not cognizable under Rule 32. Therefore, these allegations are summarily dismissed by the Court.
"II.B.(vii). Claim that the State failed to disclose information concerning the voluntariness [of] Lewis Jones's statement to law enforcement

"Woods's contends that Jones was subjected to coercive tactics during his interrogation by law enforcement and was offered leniency by the State in exchange for his testimony. Woods contends that this information was only `recently revealed' and could not have been discovered earlier through the exercise of due diligence. There is nothing, however, in the trial record or in Woods's amended petition that would establish that Jones was not available to trial counsel prior to trial. Moreover, Woods fails to plead in his amended petition that Jones falsely testified against him as a result of law enforcement's alleged coercion and the State's alleged promises of leniency. The Court finds that this allegation fails to establish a Brady violation; it is summarily dismissed by the Court.
". . . .
"II.B.(x). Claim that the State failed to disclose full and complete information about DNA and blood spatter tests or experiments done in connection with the murder of the victim

"Woods fails to proffer any facts in . . . his amended petition that if he had been given additional information by the State concerning forensic tests performed in this case that any favorable evidence would have been produced. The Court finds this allegation fails to establish a Brady violation; therefore, it is summarily dismissed by the Court."
(C.R. 757-63.) The circuit court also found:
"II.A. Claims of newly-discovered evidence regarding Woods's confession

". . . In his original petition, Woods labeled these allegations as follows: `The State Violated Mr. Woods's Right of Due Process, Right to Counsel, and Right to Remain Silent by Introducing an Involuntary Statement Against Him at Trial.' (Woods's first petition at p. 6) In its answer to Woods's first petition, the State pleaded, and the Court agrees, that these claims are precluded pursuant to Rule 32.2(a), Ala. R.Crim. P., and, thus, could not be reviewed by this Court. (State's answer at pp. 3-6) In his amended petition, Woods seeks review of these allegations under the guise *510 of `newly discovered evidence.' The only differences in Part I of Woods's original petition and Part I of Woods's amended petition are the title and the contentions in Woods's amended petition that these `facts' were `recently discovered' by his Rule 32 counsel. Regardless of how Woods labels them, the Court finds that the allegations in Part I of Woods's amended petition are nothing more than attacks on voluntariness of his statement to law enforcement. The voluntariness of Woods's three-page, hand-written statement, was addressed in detail by the trial court, the Alabama Court of Criminal Appeals, and the Alabama Supreme Court. R. 257-284; Woods v. State, 789 So.2d at 915-921; Ex parte Woods, 789 So.2d 944-947. The allegations in Part I of Woods's amended petition are precluded because they either were or could have been raised or addressed at trial and because they were or could have been raised or addressed on direct appeal. Rules 32.2(a)(2)-(a)(4), Ala. R.Crim. P.
"Out of an abundance of caution, however, the Court will review the allegations in Part I of Woods's amended petition under the requirements of newly discovered evidence.
". . . .
"II.A.(i). Claim that Woods was subjected to over 24 hours of coercive interrogation

". . . In an attempt to support this claim, Woods contends that Tinsley Parker, a jailer at the St. Clair County Jail when he was incarcerated, `recently informed [Woods's Rule 32] counsel' that detectives threatened him if he did not confess. Nowhere in his amended petition does Woods contend that he informed his trial counsel that he was subjected to continuous interrogation by law enforcement. Woods, being the subject of this alleged coercion, could have informed his trial counsel prior to or during trial. `Evidence is not newly discovered where the accused knew of it but did not mention it to his counsel.' Stemple v. State, 352 So.2d 33, 37 (Ala. Crim.App.1977). This Court finds this claim is procedurally barred because it could have been but was not raised at trial and because it could have been but was not raised on appeal. Rules 32.2(a)(3) and (a)(5), Ala. R.Crim. P. Further, the Court finds that this information does not constitute newly discovered evidence under Rule 32.1(e), Ala. R.Crim. P. See, Harris v. State, 778 So.2d 256, 257 (Ala.Crim.App.2000) (holding that recent discovery of a `deal' between a codefendant and the State `does not constitute newly discovered evidence.") Therefore, this claim is summarily dismissed by the Court.
"Woods also contends . . . that Louis Jones, a witness for the State, has `recently informed [Woods's Rule 32] counsel' that he was threatened with prosecution if he did not implicate Woods and that detectives tor[e] up statement that, according to Woods, the detectives did not like. (Woods's amended petition at p. 8) Nowhere . . . does he contend that Jones testif[ied] falsely at his trial. Woods has stated no facts in his amended petition that would establish that this information, if true, could not have been discovered through due diligence or that it would establish that he was innocent or did not deserve to be sentenced to death. Rule 32.1(e), Ala. R.Crim. P. The Court finds this claim is procedurally barred because it could have been but was not raised on appeal. Rules 32.2(a)(3) and (a)(5), Ala. R.Crim. P. Therefore, this claim is summarily dismissed by the Court.
"II.A.(ii). Claim that if the facts in Part I.A. had been introduced at *511 trial, the State would not have met its burden to overcome the presumption that Woods's custodial statements were involuntary

". . . As previously stated, nowhere in his amended petition does Woods contend he informed his trial counsel he was subjected to continuous interrogation by law enforcement. . . . Further, because the facts . . . would have been known to Woods and, at the most, would have amounted to impeachment evidence, it `does not constitute newly discovered evidence' under Rule 32.1(e). Harris v. State, 778 So.2d at 257. This claim, therefore, is summarily dismissed by the Court.
"II.A.(iii). Claim that police detectives overcame Woods's will by threatening him with execution if he did not give a statement

". . . If the investigating detectives had threatened Woods with execution in order to get him to confess, Woods certainly would have known it before and at the time of trial. This claim is procedurally barred because it could have been but was not raised at trial and because it could have been but was not raised [and] addressed on appeal. Rules 32.2(a)(3) and (a)(5), Ala. R.Crim. P. Further, because Woods would have known detectives had threatened him, if, in fact it occurred, it does not meet the requirements of newly discovered evidence under Rule 32.1(e). `Evidence is not newly discovered where the accused knew of it but did not mention it to his counsel.' Stemple v. State, 352 So.2d 33, 37 (Ala.Crim.App.1977). Therefore, this claim is summarily dismissed by the Court.
"II.A.(iv). Claim that the State overcame Woods's will by repeatedly seeking to reinitiate questioning after he had indicated he did not want to speak to police

". . . This issue was extensively addressed by the trial court, the Alabama Court of Criminal Appeals, and the Alabama Supreme Court. R. 257-284; Woods v. State, 789 So.2d at 916-920; Ex parte Woods, 789 So.2d 941, 944-945 (Ala.2001). . . . [T]he facts alleged . . . fail to meet any of the requirements of newly discovered evidence under Rule 32.1(e), Ala. R.Crim. P. Therefore, this claim is summarily dismissed by the Court.
"II.A.(v). Claim that the State immediately reinitiated questioning after Woods provided an unequivocal request to remain silent

". . . In an attempt to meet the requirements of newly discovered evidence, Woods contends in his amended petition that Kevin Gillilan, a jailer at St. Clair County Jail during the time Woods was incarcerated, has `recently' informed Rule 32 counsel that Gillilan did not contact detectives at Woods's request. Woods fails to plead any fact in his amended petition that, if true, would establish this information could not have been discovered through reasonable diligence or that this alleged `evidence' would establish that Woods is innocent of capital murder or did not deserve to be sentenced to death. . . . [T]he court finds that the allegations . . . do not meet the requirements of newly discovered evidence under Rule 32.1(e), Ala. R.Crim. P. Therefore, this claim is summarily dismissed by the Court.
"II.A.(vi). Claim that Woods was particularly susceptible to the State's allegedly coercive method of questioning

"Woods contends that the detectives who questioned him `unconstitutionally exploited' his `age, intelligence, intoxication, *512 and fatigue.' . . . [T]he allegations . . . do not meet any of the requirements of newly discovered evidence under Rule 32.1(e), Ala. R.Crim. P. Therefore, this claim is summarily dismissed by the Court."
(C.R. 750-57.) The record supports the circuit court's findings, and we adopt them as part of this opinion. The appellant did not establish that he is entitled to relief on his Brady claims, either separately or collectively. Therefore, the circuit court properly summarily dismissed those claims. See Rule 32.7(d), Ala. R.Crim. P.

IV.
The appellant's fourth argument is that the circuit court erred in summarily dismissing his claims that his attorneys rendered ineffective assistance during the guilt phase of his trial.

A. Preliminary Arguments

Before he makes his ineffective-assistance claims, the appellant raises some preliminary arguments. Likewise, we will address those preliminary arguments before we address his ineffective-assistance claims.
The appellant contends that the circuit court improperly rejected pleading in the alternative; improperly applied the specificity requirements set forth in Rule 32, Ala. R.Crim. P.; improperly equated the Strickland and plain error standards; and improperly refused to examine the alleged errors cumulatively. After examining the record, we conclude that the circuit court did not reject pleading in the alternative and did not misapply the specificity requirements set forth in Rule 32, Ala. R.Crim. P.
Further, we reject the appellant's argument that the circuit court improperly equated the Strickland and plain error standard. He based his argument on the fact that State v. Clark, 913 S.W.2d 399 (Mo.Ct. App.1996), which we quoted in Williams v. State, 783 So.2d 108 (Ala.Crim.App.2000), has been abrogated. However, our holding in Williams was not solely based on Clark. Rather, we also cited Thomas v. State, 766 So.2d 860, 953 (Ala.Crim.App. 1998), aff'd, 766 So.2d 975 (Ala.2000), which was authored by Judge Patterson, in which this court held:
"However, Thomas has failed to establish the two prongs of Strickland v. Washington. In implicitly rejecting the underlying substantive issue as failing to present any plain error, Rule 45A, Ala. R.App. P., the Alabama Supreme Court implicitly found that the alleged error did not or probably did not adversely affect the substantial right of Thomas. Thus, we must concur with the attorney general that Thomas's ineffective trial counsel argument fails because, by virtue of the Alabama Supreme Court's implicit ruling, Thomas cannot satisfy the prejudice prong of Strickland."[1]
Although Clark has been abrogated, Thomas has not, and our holding in Williams therefore remains valid.[2] The *513 analysis used in reviewing for plain error is substantially the same as the analysis that is used to determine prejudice under Strickland. Clearly, then, when this court and/or the Alabama Supreme Court has specifically addressed and rejected a substantive claim on direct appeal, whether reviewing for plain or preserved error, a petitioner in a Rule 32 proceeding who raises an ineffective-assistance claim based on that same substantive claim cannot establish prejudice under Strickland.[3] Therefore, the appellant's argument that the circuit court improperly equated the Strickland and plain error standards is without merit.
Finally, in Coral v. State, 900 So.2d 1274, 1284 (Ala.Crim.App.2004), we stated:
"Coral also argues in this section of his brief that `[a]s long as some portions of the claim meets the sufficiency requirements of Rule 32, there is no rationale for the argument that other portions of the claim do not.' (Coral's brief, at p. 26.) However, the claim of ineffective assistance of counsel is a general allegation that often consists of numerous specific subcategories. Each subcategory is a independent claim that must be sufficiently pleaded. As the Supreme Court of Pennsylvania stated in Commonwealth v. Lambert, 568 Pa. 346, 797 A.2d 232 (2001):
"`[S]peaking in the context of "layered" ineffectiveness claims, . . . although some latitude may be afforded in the pleadings, PCRA [Post Conviction Relief Act] counsel generally "must, in pleadings and briefs, undertake to develop, to the extent possible, the nature of the claims asserted with respect to each individual facet of a layered ineffectiveness claim . . . "'
"568 Pa. at 364, 797 A.2d at 242 (quoting Commonwealth v. Williams, 566 Pa. 553, 566-67, 782 A.2d 517, 525 (2001) (emphasis omitted)). See also Bracknell, supra."
Accordingly, the circuit court did not err in considering each ineffective-assistance claim individually.

B. Ineffective-Assistance Claims

We now address the specific ineffective-assistance claims the appellant raises. Where appropriate, we apply the principles set forth in Part A.
The appellant asserts that his trial attorneys rendered ineffective assistance because they:
1) did not investigate and interview witnesses, including jail guards, whose testimony allegedly would have supported the suppression of evidence;
2) did not investigate the State's coercion of Jones, discover facts necessary to cross-examine Jones, and seek an instruction on accomplice liability;

*514 3) did not investigate other suspects and did not present evidence from several witnesses that would have supported his contention that he did not commit the murder;
4) did not investigate, challenge, and rebut the State's forensic evidence;
5) did not investigate and challenge the State's admission of a towel and gloves into evidence and object to the prosecutor's improper closing argument about the evidence;
6) did not seek or introduce necessary expert assistance;
7) did not object to the trial court's errors of law;
8) did not investigate relationships with the victim and pursue Batson, change of venue, and recusal motions;
9) allegedly conceded that he was guilty during their closing argument; and
10) did not receive adequate compensation.
With regard to Claims 1, 2, 3, 8, and 10, the appellant has made several allegations, but he has not supported his claims factually. See Rules 32.3 and 32.6(b), Ala. R.Crim. P. Therefore, he has not established that his attorneys' performance was deficient and that that deficient performance prejudiced him in these instances. See Strickland, supra. Accordingly, he is not entitled to relief on these claims.
With regard to Claim 4, the circuit court found:
"IV.C.(vii). Claim that trial counsel was ineffective for not objecting to testimony about blood being found inside the barrel of the murder weapon

". . . Woods contends that this evidence was `irrelevant but extremely prejudicial' because the State could not prove the blood belonged to the victim or that is was even human.
"The evidence presented by the State established that the victim was shot at close range. Dr. Joseph Embry, the State's pathologist, testified that the distance between the victim and the murder weapon was `between four and twelve inches.' (R. 492) Angelo Della Manna, the State's DNA and blood spatter expert, testified that in cases where a weapon is discharged close to a victim that blood `can be deposited on the exterior or the weapon or even on the interior of the barrel.' (R. 636) Because [his] testimony was relevant, any objection lodged by trial counsel would have been overruled. Trial counsel is not ineffective for failing to object to admissible evidence. See, Thomas v. Jones, 891 F.2d 1500, 1505 (11th Cir.1989). The allegation . . . fails to state a claim or establish a material issue of fact or law exist[s] that would entitle him to relief as required by Rule 32.7(d), Ala. R.Crim. P.; therefore, it is summarily dismissed by the Court.
"IV.C.(x). Claim that trial counsel was ineffective for not objecting to the testimony from the State's DNA expert, Angelo Della Manna

". . . Woods contends that the testimony of Angelo Della Manna, the State's DNA expert: 1) was admitted under the wrong legal standard; 2) failed to establish the reliability of the test kits; 3) was inaccurate and incomplete. . . .
"Della Manna testified extensively about the DNA analysis used in this case, the polymerase chain reaction (PCR) method. Della Manna stated that PCR is an accepted method of DNA analysis throughout the country and the world. (R. 528, 532) Della Manna stated the procedures used in Birmingham Forensics Lab where he worked had undergone *515 extensive validation studies and had been shown to be reliable. (R. 532-533) Della Manna explained the control systems used in the PCR process and indicated that no errors were evident in the analysis performed in this case. (R. 536-537) Della Manna also testified that the results of his statistical findings were reviewed independently by another forensic scientist to ensure his calculations were correct. (R. 550-551) The Court finds that the State proved that theory and technique of the PCR method of DNA analysis employed in Woods's case were both reliable and relevant. See, Ex parte Turner, 746 So.2d 355, 361 (Ala.1998). The Court finds that this allegation is without merit; therefore, it is summarily dismissed. Rule 32.7(d), Ala. R.Crim. P.
"Woods also contends that the State failed to establish the reliability of the test kits used in the analysis in his case. Della Manna testified, however, that the procedures used in Woods's case had been tested and were in use throughout the world, that his results had been subjected to review by another forensic scientist, that the extensive quality controls were followed, and that procedures used were widely accepted in the scientific community as being reliable. See, Ex parte Taylor, 825 So.2d 769, 778 (Ala.2002). The Court finds that this allegation is without merit; therefore, it is summarily dismissed. Rule 32.7(d), Ala. R.Crim. P.
"IV.C.(xi). Claim that trial counsel was ineffective for failing to `adequately challenge' the forensics work by the State

". . . This allegation consists solely of a laundry list of tests that, according to Woods, the State did not perform on certain items of evidence. The Court of Criminal Appeals has held that:
"`claims of failure to investigate must show with specificity what information would have been obtained with investigation, and whether, assuming the evidence is admissible, its admission would have produced a different result.'
"Thomas v. State, 766 So.2d 860, 892 (Ala.Crim.App.1998), citing, Nelson v. Hargett, 989 F.2d 847, 850 (5th Cir. 1993). Woods fails to plead in his amended petition what the result of any of the tests listed . . . would have been or how such results would have benefitted his defense. See, Williams v. State, 783 So.2d 108, 129-130 (Ala.Crim.App. 2000). The allegation . . . fails to meet the specificity and full factual pleading requirements of Rule 32.6(b), Ala. R.Crim. P.; therefore, it is summarily dismissed by the Court."
(C.R. 793, 795-98.) The record supports the circuit court's findings, and we adopt them as part of this opinion. Furthermore, we have reviewed the appellant's allegations and the direct appeal record, and we conclude that he has not established that he is entitled to relief in this regard.
Regarding Claim 5, on direct appeal, this court found that there was not any error in the admission of the towel and the gloves into evidence. See Woods v. State, 789 So.2d at 922-23, 924-25. Therefore, the appellant cannot establish that his attorneys rendered ineffective assistance in this regard.
With regard to Claim 6, the circuit court found:
"IV.D.(i). Claim that trial counsel was ineffective for failing to pursue their motion for an independent psychological evaluation of Woods

". . . Woods contends that expert testimony concerning his alleged drug and *516 alcohol abuse would have convinced the trial court to charge the jury on felony-murder and would have aided trial counsel in convincing the jury to return a conviction for the lesser included offense of manslaughter.
"In addition to being completely speculative, Woods fails to identify any mental health expert by name, or of field of experience, or proffer what their specific testimony would have been concerning his alleged long-term use of drugs and alcohol. A petitioner cannot be granted relief based on speculation. See, McNair v. State, 706 So.2d 828, 838 (Ala.Crim.App.1997).
". . . .
IV.D.(ii). Claims that trial counsel was ineffective for failing to procure expert assistance in the areas of blood spatter interpretation, ballistics, and fingerprints

". . . Woods contends that counsel was ineffective for failing to obtain expert assistance in blood spatter interpretation, ballistics, and fingerprints. Woods also contends that trial counsel failed to utilize the limited DNA expert assistance they did secure and failed to have DNA tests performed on certain items of evidence. Woods fails to identify any expert by name, or field expertise, or state in his amended petition what beneficial testimony such experts might have rendered. Woods also fails to identify what additional questions trial counsel could have asked the State's DNA expert that would have had any effect on the outcome of his trial or proffer in his amended petition what the results of any DNA tests on the items listed . . . would have been. See, Horsley v. Alabama, 45 F.3d 1486, 1495 (11th Cir.1995) (holding that the petitioner failed to establish that his trial counsel were ineffective for not producing a favorable expert at trial); see also, Flowers v. State, 799 So.2d 966, 993 (Ala.Crim.App.2000) (holding that trial counsel was not ineffective for failing to procure a DNA and ballistics expert where there was `no evidence that either expert would have benefitted the defense.') The allegations . . . fail to comply with the specificity and full factual disclosure requirements of Rule 32.6(b), Ala. R.Crim. P.; therefore, they are summarily dismissed by the Court."
(C.R. 801-03.)
With regard to Claim 7, on direct appeal, this court found that there was not any error when the trial court asked about potential witnesses, when it did not instruct the jury that it would determine whether the appellant voluntarily made his statement, and when it instructed the jury on reasonable doubt. See Woods v. State, 789 So.2d at 922-23, 924-25. Therefore, the appellant cannot establish that his attorneys rendered ineffective assistance in this regard. Further, the appellant has not pled sufficient facts to establish that he was entitled to a jury instruction on accomplice liability. Therefore, he has not satisfied his burden under Strickland and Rules 32.6(b) and 32.3, Ala. R.Crim. P.
With regard to Claim 9, we have reviewed defense counsel's guilt phase closing argument. Based on that review, we do not find that counsel conceded that the appellant was guilty. In fact, counsel argued that Forman shot and killed the victim and that the appellant was not aware of what was happening. Therefore, the direct appeal record does not support the appellant's argument.
For these reasons, the appellant has not established, individually or cumulatively, that he is entitled to relief on his claims that his attorneys rendered ineffective assistance *517 during the guilt phase of his trial. Therefore, the circuit court properly summarily denied relief as to these claims.

V.
The appellant's fifth argument is that the circuit court erred in summarily dismissing his claims that his attorneys rendered ineffective assistance during the penalty phase of his trial. Specifically, he contends that they did not investigate and present evidence about his tortured upbringing, his crack cocaine addiction and psychological condition, and his positive qualities. With regard to this claim, the circuit court found:
"V.C. Claim that trial counsel was ineffective for failing to prepare themselves and Woods's mitigation witnesses for the penalty phase

". . . Woods contends that trial counsel failed to `prepare the witnesses for their experience on the witness stand,' and failed to question witnesses concerning `[Woods's] childhood and background that would have provided important mitigating evidence for the judge and jury.' (Woods's petition at p. 79) Woods's allegation is vague and non-specific. Woods fails to state . . . how trial counsel's witness preparation was deficient or indicate what questions they could have asked any particular mitigation witness that would have produced beneficial information. This allegation . . . fails to comply with the specificity and full factual disclosure requirements of Rule 32.6(b), Ala. R.Crim. P.; therefore, it is summarily dismissed by the Court.
"V.D. Claim that trial counsel was ineffective for failing to present aspects of Woods's background to the jury and judge

". . . In support of this claim, Woods contends that United States Supreme Court held in Lockett v. Ohio, 98 S.Ct. 2954, 2964-2965 (1978), that `[i]t is constitutionally required that the trial court and jury consider "as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." Lockett v. Ohio, 438 U.S. 586, 604 (1978).' (Woods's amended petition at p. 84) Woods misinterprets the Supreme Court's holding in Lockett. Lockett held that a sentencer in a capital case cannot be precluded from considering mitigating factors offered by a capital defendant, not that a sentence was required to consider such factors as mitigating. Woods fails to proffer . . . aspect of or event in his background that, if presented to the jury, would have changed [its] recommendation or, if presented to the judge, would have changed Woods's sentence of death. This allegation . . . fails to comply with the specificity and full factual disclosure requirements of Rule 32.6(b), Ala. R.Crim. P.; therefore, it is summarily dismissed by the Court.
"V.E. Claim that trial counsel failed to questions members of Woods's family

". . . Woods fails to identify any family member by name, proffer what their testimony would have been at trial, or argue why such testimony would have caused a different result at the penalty phase or at sentencing. The allegation . . . fails to comply with the specificity and full factual disclosure requirements of Rule 32.6(b), Ala. R.Crim. P.; therefore, it is summarily dismissed by the Court.
"V.F. Claim that trial counsel failed to interview members of the community about Woods

". . . Woods fails to identify any member of the community by name, proffer *518 what their testimony would have been at trial, or argue why such testimony would have caused a different result at the penalty phase or at sentencing. The allegation . . . fails to comply with the specificity and full factual disclosure requirements of Rule 32.6(b), Ala. R.Crim. P.; therefore, it is summarily dismissed by the Court.
"V.G. Claim that trial counsel only met briefly with Woods's mother and sister and failed to interview Woods's natural father

". . . Woods fails to proffer in his amended petition what mitigating information Woods's mother or sister could have provided with a more extensive interview. Woods also fails [to] proffer what, if any, beneficial information his natural father could have provided at the penalty phase. The allegations . . . fail to comply with the specificity and full factual disclosure requirements of Rule 32.6(b), Ala. R.Crim. P.; therefore, they are summarily dismissed by the Court.
"V.H. Claim that trial counsel failed to elicit additional testimony during the penalty phase from Minnie Woods, Pearlie Woods, and Doris Ragland

". . . In Waters v. Thomas, 46 F.3d 1506, 1514 (11th Cir.1995) (en banc), the Eleventh Circuit held:
"`That other witnesses could have been called or other testimony elicited usually proves at most the wholly unremarkable fact that with the luxury of time and the opportunity to focus resources on specific part of a made record, post-conviction counsel will inevitably identify shortcomings in the performance of prior counsel.'
"The Waters Court went on to hold that:
"`The widespread use of the tactic of attacking trial counsel by showing what "might have been" proves that nothing is clearer than hindsightexcept perhaps the rule that we will not judge trial counsel's performance through hindsight.'
"Id.

"Trial counsel presented five witnesses at the penalty phase of Woods's trial, including his mother. Trial counsel considered calling other witnesses, but made the strategic choice not to because they had criminal records and, according to counsel, would have been harmful to Woods's case. (R. 793) The mitigation witnesses presented by trial counsel had known Woods all or most of his life and testified that Woods was a good child that fell in with a bad crowd. The mitigation witnesses testified that Woods's actions were not in keeping with his character and asked the jury to recommend that Woods be sentenced to life without parole instead of death. The Court finds that, given the overwhelming evidence of Woods's guilt, this was a reasonable mitigation strategy. Woods has failed to proffer in his amended petition any facts that, if true, would satisfy his burden of establishing that trial counsel's performance during the penalty phase of trial was deficient or caused him to be prejudiced as required by Strickland. The Court finds that the allegation . . . [is] without merit; therefore, it is summarily dismissed. Rule 32.7(d), Ala. R.Crim. P.
"V.I. Claim that trial counsel failed to present testimony from Woods's friends and members of the community

". . . The only people Woods identifies by name in his amended petition that, according to Woods, were willing to testify on his behalf are Mr. and Mrs. Richard Glenn, the owners of a local Dairy Queen where Woods had worked. *519 Woods fails to offer names of any of Woods's friends or others in the community that he now contends could have testified during the penalty phase of the trial. Moreover, given the overwhelming evidence of Woods's guilt and, in the light of the other mitigation evidence presented at trial, the Court finds that there is no reasonable probability that the testimony of a former employer, even if favorable, would have caused a different outcome in the jury's recommendation or the trial court's sentence. See, Thompson v. Wainwright, 787 F.2d at 1453 (holding that additional mitigating evidence would not have changed the petitioner's death sentence). The Court finds that the allegations . . . are without merit; therefore, they are summarily dismissed. Rule 32.7(d), Ala. R.Crim. P.
". . . .
"V.K. Claim that trial counsel failed to procure expert assistance for the penalty phase of Woods's trial

". . . In Horsley v. Alabama, 45 F.3d 1486, 1495 (11th Cir.1995), the Eleventh Circuit held:
"`To prove prejudice by failure to investigate and failure to produce a certain kind of expert witness, a habeas petitioner must demonstrate a reasonable likelihood that an ordinary competent attorney conducting a reasonable investigation would have found an expert similar to the one eventually produced.'
"Similarly, the Alabama Court of Criminal Appeals has held that:
"`claims of failure to investigate must show with specificity what information would have been obtained with investigation, and whether, assuming the evidence is admissible, its admission would have produced a different result.'
"Thomas v. State, 766 So.2d 860, 892 (Ala.Crim.App.1998), citing, Nelson v. Hargett, 989 F.2d 847, 850 (5th Cir. 1993).
"Woods failed to identify in his amended petition by name or field of expertise any expert in any field that would have testified at trial in the manner that he now alleges in his amended petition. Woods also fails to identify by name any of the `readily available lay witnesses and family members' that would have testified he `was exposed to trauma as a child and was at high risk of injury to his brain.' (Woods's amended petition at p. 90) The allegations . . . fail to comply with the specificity and full factual disclosure requirements of Rule 32.6(b), Ala. R.Crim. P.; therefore, they are summarily dismissed by the Court."
(C.R. 824-30.)
In Daniels v. State, 650 So.2d 544, 568-70 (Ala.Crim.App.1994), we stated the following regarding a claim that trial counsel had rendered ineffective assistance during the penalty phase of a capital murder trial:
"In determining whether Haas was ineffective at original sentencing, . . . we recognize that the
"`two-pronged Strickland analysis applies whether the ineffectiveness complained of occurred in the defendant's trial or in a subsequent adversarial sentencing proceeding. However, in a challenge to the imposition of a death sentence, the prejudice prong of the Strickland inquiry focuses on whether "the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death."'
"Stevens v. Zant, 968 F.2d 1076, 1081 (11th Cir.1992) (citation omitted), cert. denied, [507] U.S. [929], 113 S.Ct. 1306, *520 122 L.Ed.2d 695 (1993). We also recognize that
"`[w]hile "[i]t should be beyond cavil that an attorney who fails altogether to make any preparations for the penalty phase of a capital murder trial deprives his client of reasonably effective assistance of counsel by any objective standard of reasonableness," see Blake v. Kemp, 758 F.2d 523, 533 (11th Cir.1985), it is unclear how detailed an investigation is necessary to provide a defendant with the effective assistance of counsel. Strickland only requires that counsel's actions fall within the wide spectrum of what can be considered reasonable assistance of counsel.'
"White v. Singletary, 972 F.2d 1218, 1224 (11th Cir.1992). The principles regarding an attorney's duty to conduct an investigation into mitigating evidence have been summarized as follows:
"`An attorney has a duty to conduct a reasonable investigation, including an investigation of the defendant's background, for possible mitigating evidence. Thompson v. Wainwright, 787 F.2d 1447, 1451 (11th Cir.1986). First, it must be determined whether a reasonable investigation should have uncovered such mitigating evidence. If so, then a determination must be made whether the failure to put this evidence before the jury was a tactical choice by trial counsel. If so, such a choice must be given a strong presumption of correctness, and the inquiry is generally at an end. Funchess v. Wainwright, 772 F.2d 683, 689-90 (11th Cir.1985). If, however, the failure to present the mitigating evidence was an oversight, and not a tactical decision, then a harmlessness review must be made to determine if there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Thus, it must be determined that defendant suffered actual prejudice due to the ineffectiveness of his trial counsel before relief will be granted.'
"Middleton v. Dugger, 849 F.2d 491, 493 (11th Cir.1988).
"Applying the foregoing principles to the issue of whether Haas provided effective assistance of counsel at original sentencing, we conclude that the appellant's claim is without merit. Although the defense called only one witness at the sentencing hearing, that witness was Mrs. Hebert, the appellant's mother, who pleaded for the appellant's life. Mrs. Hebert had retained Haas, conferred with him at length, paid all his trial fees, and, by the time of sentencing, had exhausted her funds. The circuit court's sentencing order stated that `it is apparent to the court that [Mrs. Hebert] was devoted to [the appellant].'
"Since Haas had spoken with Mrs. Hebert about the appellant and had observed by her words and actions that she appeared to be `devoted' to the appellant, we cannot fault Haas for failing to discover the appellant's `traumatic' childhood, in which, according to later testimony by Dr. Herlihy, Mrs. Hebert's `emotional rejection' of her son played a large part. Compare Bertolotti v. Dugger, 883 F.2d 1503, 1520 (11th Cir.1989) (defense counsel held to have provided effective assistance on claim that counsel overlooked or failed to investigate evidence of defendant's traumatic childhood, where counsel interviewed defendant's parents), cert. denied, 497 U.S. 1032, 110 S.Ct. 3296, 111 L.Ed.2d 804 (1990). See also Beets v. Collins, 986 F.2d 1478, 1488-89 (5th Cir.1993) (although counsel did not `conduct a thorough investigation of [the defendant's] *521 medical, mental, and psychological history,' which would have revealed that the defendant `was raised in abject poverty, experienced a debilitating hearing loss, was afflicted with learning disabilities, had received head injuries as a child, and suffers from battered woman syndrome,' the court observed that the defendant never gave her attorney `any hint that she had been abused by previous husbands or boyfriends. Neither [the defendant] nor any other member of her family ever conveyed to [the attorney] any information giving him reason to believe that she had a history of being physically abused.'), rehearing granted, 998 F.2d 253 (5th Cir.1993); Cantu v. Collins, 967 F.2d 1006, 1016 (5th Cir.1992) (despite fact that counsel failed to present evidence of defendant's `low IQ, emotional immaturity, troubled youth, trauma as a result of his parents' divorce, and appearance of neglect,' court found that counsel had `thoroughly investigated these claims, consulting with his client as well as [client's] father and brother for possible mitigating evidence,' and the claims were not supported in fact), cert. denied, [509] U.S. [926], 113 S.Ct. 3045, 125 L.Ed.2d 730 (1993); Wilkerson v. Collins, 950 F.2d 1054, 1064-65 (5th Cir.1992) (although attorney failed to discover or develop mitigating evidence that defendant had a `deprived family background,' and psychological and mental `limitations,' the court observed that `trial counsel interviewed [the defendant], his mother, and other relatives. Neither [the defendant] nor his relatives were able to supply the names of potential defense witnesses. Investigation did not reveal reason to suspect that [the defendant's] mental capacity was in any fashion impaired.'), cert. denied, [509] U.S. [921], 113 S.Ct. 3035, 125 L.Ed.2d 722 (1993); Thompson v. State, 581 So.2d 1216, 1238 (Ala. Cr.App.1991) (upholding circuit court's finding that counsel, who presented only the testimony of defendant's mother at sentencing, was not ineffective for failing to present evidence of the defendant's violent family background, addiction and substance abuse), cert. denied, 502 U.S. 1030, 112 S.Ct. 868, 116 L.Ed.2d 774 (1992).
"We hold that Haas was not ineffective at the original sentencing proceeding."
650 So.2d at 568-70 (emphasis omitted). Also, counsel does not necessarily render ineffective assistance simply because he does not present all possible mitigating evidence. "Although the failure to conduct a reasonable investigation of possible mitigating evidence may constitute ineffective assistance of counsel, `counsel may make a reasonable strategic judgment to present less than all possible available evidence in mitigation.' Stanley v. Zant, 697 F.2d 955, 965 (11th Cir.1983), cert. denied, 467 U.S. 1219, 104 S.Ct. 2667, 81 L.Ed.2d 372 (1984)." Lundy v. State, 568 So.2d 399, 403 (Ala.Crim.App.1990).
"When a decision to not put on certain mitigating evidence is based on a `strategic choice,' courts have always found no ineffective performance. Moore v. Maggio, 740 F.2d 308 (5th Cir.1984), cert. denied, 472 U.S. 1032, 105 S.Ct. 3514, 87 L.Ed.2d 643 (1985); Lowenfield v. Phelps, 817 F.2d 285 (5th Cir.1987), aff'd, 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988). No two lawyers would try a case exactly the same way.
"We cannot say that counsel's performance is deficient because he failed to call more witnesses at the sentencing phase. `The decision not to call a particular witness is usually a tactical decision not constituting ineffective assistance of counsel.' Oliver v. State, 435 So.2d 207, 208 (Ala.Cr.App.1983). At the hearing *522 on the Rule 32 petition, the appellant's mother, two of his aunts, an uncle, and several old friends offered character testimony. Most of these witnesses did not have contact with the appellant near the time of the murder. There has never been a case where additional witnesses could not have been called. The appellant presented relatives and personal friends who, upon interview, were found to testify on his behalf. We refuse to set a standard that a court may be reversed because it did not hear unoffered testimony from still more friends and relatives. We also refuse to say that a member of the bar is guilty of ineffectiveness for not calling every witness and friend who was willing to testify. To hold otherwise would clog an already overburdened system with repetitious testimony. The appellant has failed to satisfy either prong of the Strickland test."
State v. Tarver, 629 So.2d 14, 21 (Ala.Crim. App.1993).
"With regard to McKinnon's representation of Morrison at the punishment-fixing and sentencing phases of his trial, we find that the observations of the court in Clark v. Dugger, 834 F.2d 1561, 1568 (11th Cir.1987), are appropriate:
"`The failure to conduct a reasonable investigation of possible mitigating evidence may render counsel's assistance ineffective. Lightbourne v. Dugger, 829 F.2d 1012, 1025 (11th Cir.1987); Thompson v. Wainwright, 787 F.2d 1447, 1450 (11th Cir.1986), cert. denied, 481 U.S. 1042, 107 S.Ct. 1986, 95 L.Ed.2d 825 (1987). "After a sufficient investigation, however, `counsel may make a reasonable strategic judgment to present less than all possible available evidence in mitigation.'" Lightbourne, 829 F.2d at 1025 (quoting Mitchell v. Kemp, 762 F.2d 886, 889 (11th Cir.1985), cert. denied, 483 U.S. 1026, 107 S.Ct. 3248, 97 L.Ed.2d 774 (1987) and Stanley v. Zant, 697 F.2d 955, 965 (11th Cir. 1983), cert. denied, sub nom. [Stanley v. Kemp,] 467 U.S. 1219, 104 S.Ct. 2667, 81 L.Ed.2d 372 (1984)). In essence, "[c]ounsel has no absolute duty to present mitigating character evidence." Id. (quoting Mitchell, 762 F.2d at 889). [Counsel] conducted a reasonable investigation to determine the availability of appropriate mitigating evidence and simply made a tactical decision to not present some of the available mitigating evidence. In this circuit, [counsel's] decision is "accorded a strong presumption of correctness which is `virtually unchallengeable.'" Id. (quoting Sinclair v. Wainwright, 814 F.2d 1516, 1519 (11th Cir.1987) and Strickland v. Washington, 466 U.S. 668, 690, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984)). Given the alternatives . . . faced, [counsel's] handling of the penalty phase was not unreasonable. See Stanley, 697 F.2d at 958-70. We therefore conclude that there has been no showing of ineffective assistance nor prejudice to defendant in the way trial counsel prepared and tried [this] case.'"
Morrison v. State, 551 So.2d 435, 445 (Ala. Crim.App.1989).
"We find that the holding of Fleming v. Kemp, 748 F.2d 1435, 1452 (11th Cir. 1984), cert. denied, 475 U.S. 1058, 106 S.Ct. 1286, 89 L.Ed.2d 593 (1986), is applicable here:
"`In summary, we are not persuaded by petitioner's argument that . . . [defense counsel] rendered him ineffective assistance of counsel. Petitioner's examples of professional dereliction dissolve away under close *523 scrutiny, leaving at best a handful of colorable claims. A defense attorney is not ineffective solely because his client is sentenced to death. "Intrusive post-trial inquiry into attorney performance," such as that which has been required in this case, may "dampen the ardor and impair the independence of defense counsel, discourage the acceptance of assigned cases, and undermine the trust between attorney and client." Strickland v. Washington, [466] U.S. at [690], 104 S.Ct. at 2066. Counsel's performance, here, ensured a fundamentally "fair trial" which "produced a just result." Id. at [686], 104 S.Ct. at 2064. There is no reason to set aside petitioner's conviction or his penalty on account of the representation he received.'"
Bell v. State, 518 So.2d 840, 847 (Ala.Crim. App.1987). Finally, the appellant bears a heavy burden of proof when he claims that his counsel rendered ineffective assistance.
"Further, we cannot say that the appellant suffered any prejudice based on counsel's performance because he failed to demonstrate any evidence of mitigation. Prejudice cannot merely be alleged; it must be affirmatively proved. Duren v. State, 590 So.2d 360 (Ala.Crim. App.1990). Thus, the appellant has not shown that there is a reasonable probability that the outcome of his trial would have been different, but for trial counsel's performance. Baldwin [v. State, 539 So.2d 1103 (Ala.Crim.App.1988)], Thompson v. State, 581 So.2d 1216 (Ala. Crim.App.1991), cert. denied, 502 U.S. 1030, 112 S.Ct. 868, 116 L.Ed.2d 774 (1992)."
Brooks v. State, 695 So.2d 176, 182 (Ala. Crim.App.1996), aff'd, 695 So.2d 184 (Ala. 1997).
We have reviewed the penalty phase of the appellant's trial, and we conclude that counsel's strategy was to humanize the appellant by presenting witnesses who testified that he had been a good child and that the crime was out of character for him. This was strong mitigating evidence. As the United States District Court for the Middle District of Alabama has stated:
"[W]here the crimes committed seem to be aberrations from otherwise lawful behavior, the Eleventh Circuit has recognized that mitigating evidence of good character and the uncharacteristic nature of the crime may have more impact than in other cases. Collier [v. Turpin], 177 F.3d [1184,] 1203 [(11th Cir. 1999)]; accord Harris v. Dugger, 874 F.2d 756, 763-64 (11th Cir.1989)."
McNair v. Campbell, 307 F.Supp.2d 1277, 1318 (M.D.Ala.2004).
Finally, although the judge who presided over the Rule 32 proceedings did not preside over the trial proceedings, he specifically indicated that he would review the record of the trial proceedings before ruling on the petition. The record supports the circuit court's findings, and we adopt them as part of this opinion. Although he has made numerous allegations, the appellant has not established, individually or cumulatively, that he is entitled to relief on his claims that his attorneys rendered ineffective assistance during the penalty phase of his trial. Therefore, the circuit court properly summarily denied relief as to these claims.

VI.
The appellant's sixth argument is that his appellate attorneys rendered ineffective assistance. Specifically, he contends that they did not
1) include the preliminary hearing transcript and juror questionnaires in the record on appeal;

*524 2) challenge his sentence based on Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); and
3) litigate errors arising from the State's inadmissible and prejudicial DNA and blood spatter evidence.
With regard to these contentions, the circuit court found:
"VI.A. Claim that appellate counsel failed to ensure that the transcript of Woods's preliminary hearing and the juror questionnaires were included in the appellate record

". . . Woods's only attempt to support these allegations is his contentions that `the State's witnesses testified falsely about the circumstances of [Woods's] and [Forman's] interrogations' and that the juror questionnaires would `support[][his] argument that he did not receive a fair and impartial jury.' (Woods's amended petition at p. 100) Woods fails to identify `any issue on appeal [that was] adversely decided because of an incomplete or inaccurate appellate record.' Hubbard v. State, 584 So.2d 895, 908 (Ala.Crim.App.1991). . . . [This claim] fails to comply with the specificity and full factual disclosure requirements of Rule 32.6(b), Ala. R.Crim. P.; therefore, it is summarily dismissed by the Court.
"VI.B. Claim that appellate counsel failed to adequately attack the constitutionality of Alabama's death penalty system

". . . Woods contends that Alabama's scheme of judicial sentencing in capital murder cases is unconstitutional in the light of the United States Supreme Court's recent holding in Ring v. Arizona, 122 S.Ct. 2428 (2002). In Ring, the Supreme Court applied its holding in Apprendi v. New Jersey, 120 S.Ct. 2348 (2000), to cases where the death penalty has been imposed. In Apprendi, the Supreme Court held that a fact that increased a defendant's punishment beyond the statutory maximum had to be found by a jury beyond a reasonable doubt.
"Recently, the Alabama Supreme Court addressed the effect of Ring v. Arizona on Alabama's capital murder scheme on direct appeal in Ex parte Waldrop, 859 So.2d 1181 (Ala.2002). Waldrop, like Woods, had been convicted of capital murder during robbery in the first degree and sentenced to death. In upholding Waldrop's death sentence, the Alabama Supreme Court held that:
"`Because the jury convicted Waldrop of two counts of murder during a robbery in the first degree, a violation of Ala.Code 1975 § 13A-5-40(a)(2), the statutory aggravating circumstance of committing a capital offense while engaged in the commission of a robbery, Ala.Code 1975 § 13A-5-49(4), was `proven beyond a reasonable doubt.' Ala.Code 1975 § 13A-5-44(e); Ala. Code 1975 § 13A-5-50. Only one aggravating circumstance must exist in order to impose a sentence of death. Ala.Code 1975 § 13A-5-45(f). Thus, in Waldrop's case, the jury, and not the trial judge, determined the existence of the `aggravating circumstance necessary for imposition of the death penalty.' Ring, 536 U.S. at 609, 122 S.Ct. at 2443. Therefore, the findings reflected in the jury's verdict alone exposed Waldrop to a range of punishment that had as its maximum the death penalty. This is all that Ring and Apprendi require.'
"Based on the Alabama Supreme Court holding in Ex parte Waldrop, there is absolutely no reasonable possibility that if appellate counsel had raised a claim such as the one raised in Ring *525 that Woods would have received relief. Further, the Court notes that Ring was not decided until June 24, 2002, . . . after Woods's direct appeal became final. Appellate counsel cannot be ineffective for failing to predict changes in the law or for not raising an issue on appeal for which there is no legal [basis]. See, Inmim v. State, 654 So.2d 86, 88 (Ala.Crim.App.1995). The allegation . . . fails to state a claim or establish a material issue of fact or law . . . that would entitle him to relief as required by Rule 32.7(d), Ala. R.Crim. P.; therefore, it is summarily dismissed by the Court.
"VI.C. Claim that appellate counsel failed to litigate alleged errors concerning the State's DNA and blood spatter evidence

". . . The Court has found, however, that trial counsel was not ineffective for failing to object to the State's DNA and blood spatter evidence. . . . Appellate counsel, therefore, was not ineffective for not raising these issues on direct appeal. The allegations . . . fail to comply with the specificity and full factual disclosure requirements of Rule 32.6(b), Ala. R.Crim. P.; therefore, they are summarily dismissed by the Court."
(C.R. 836-39.) The record supports the circuit court's findings, and we adopt them as part of this opinion. Therefore, the appellant is not entitled to relief on his ineffective-assistance-of-appellate-counsel claims.

VII.
The appellant's seventh argument is that the judge who tried his case should have recused himself or ordered a change of venue for the trial. However, these claims are precluded pursuant to the provisions of Rules 32.2(a)(2)-(5), Ala. R.Crim. P.
The appellant further argues that "trial counsel's failures to seek recusal or to support the venue motion at trial with evidentiary support only demonstrate further that counsel was ineffective." (Appellant's brief at p. 114.) Although he has made allegations in this regard, he has not shown that the trial judge was impartial, that the community was saturated with prejudicial pretrial publicity, or that the venire members were actually prejudiced against him. Therefore, he has not established that his counsel rendered ineffective assistance in this regard. See Strickland, supra; Rules 32.3 and 32.6(b), Ala. R.Crim. P.

VIII.
The appellant's eighth argument concerns several errors the circuit court allegedly made in its handling of this case.

A.
First, the appellant contends that the circuit court improperly struck his second amended petition.
"Rule 32.7(b), Ala. R.Crim. P., states that `[a]mendments to pleadings may be permitted at any stage of the proceedings prior to the entry of judgment.' There is no Alabama case that defines the term `entry of judgment' as that term is used in Rule 32.7(b), Ala. R.Crim. P. However, here a `partial entry of judgment' had been made dismissing the majority of the ineffective-assistance-of-counsel claims before Coral attempted to amend his petition. Amendments are to be freely granted but not blindly allowed without regard to the specific facts surrounding each case. See McWilliams v. State, 897 So.2d 437 (Ala.Crim.App.2004); Rhone v. State, 900 So.2d 443 (Ala.Crim.App. 2004); Neelley v. State, 642 So.2d 494 (Ala.Crim.App.1993); and Cochran v. State, 548 So.2d 1062 (Ala.Crim.App. 1989). As we stated in Neelley v. State:

*526 "`In Cochran [v. State, 548 So.2d 1062 (Ala.Crim.App.1989)], defendant attempted to amend his petition eight months after it had originally been filed, after the evidentiary hearing had begun, after the circuit court had ruled on a related ground asserted in his petition, and after having previously filed a motion to amend. This court held:
"`"Cochran cannot claim that his proposed amendment was based on surprise, newly discovered evidence, or changed circumstances. `Courts may properly refuse permission to amend . . . where there is no showing of diligence or that the facts were unknown to the applicant prior to his application.' 61 Am. Jur.2d, § 312 at 301 (1981). See also Robinson v. Kierce, 513 So.2d 1005, 1006-07 (Ala.1987); National Distillers and Chemical Corp. v. American Laubscher Corp., 338 So.2d 1269, 1273-75 (Ala.1976)."
"`[Cochran, 548 So.2d at 1075.] See also Whitehead v. State, 593 So.2d 126 (Ala.Cr.App.1991). In this case, where the appellant failed to file the motion for leave to amend until seven months after the evidentiary hearing had been held and because the claims asserted in that amendment were not based on surprise, newly discovered evidence, or changed circumstance, we find no abuse of discretion by the trial court. The appellant attempts to raise in her brief to this court the same claims that were included in the second amendment; these claims are procedurally barred. Rules 20.2(a)(3), 20.2(a)(5), 20.2(b), A.R. Cr. P. Temp.'
"642 So.2d at 497. The circuit court did not abuse its discretion in failing to entertain this amended petition."
Coral v. State, 900 So.2d 1274, 1283-84 (Ala.Crim.App.2004).
In this case, the circuit court allowed the appellant to amend his petition once. It then conducted a hearing to narrow the issues and eliminate precluded claims, and it ordered the parties to submit proposed orders. Instead of submitting a proposed order, the appellant attempted to amend his petition a second time, and the circuit court struck that second amended petition. However, in its order striking the second amended petition, the circuit court specifically stated, "If the Court determines any claims remain after considering the proposed orders of the parties, the Court will entertain a motion from Woods, subject to a response from the State, to amend his Rule 32 petition." (C.R. 683.) Under these circumstances, the circuit court did not err in striking the appellant's second amended petition.

B.
Second, the appellant contends that the circuit court erred because it did not rule on his motion for recusal.
"The standard applied to a ruling on a motion for recusal was discussed by the Alabama Supreme Court in Ex parte Bryant, 682 So.2d 39 (Ala.1996). The Supreme Court stated:
"`The standard for recusal is an objective one: whether a reasonable person knowing everything that the judge knows would have a "reasonable basis for questioning the judge's impartiality." [Ex parte] Cotton, 638 So.2d [870] at 872 [(Ala.1994)]. The focus of our inquiry, therefore, is not whether a particular judge is or is not biased toward the petitioner; the focus is instead on whether a reasonable person would perceive potential bias *527 or lack of impartiality on the part of the judge in question. . . .
"`" . . .
"682 So.2d at 41. . . .
"`The burden is on the party seeking recusal to present evidence establishing the existence of bias or prejudice. Otwell v. Bryant, 497 So.2d 111, 119 (Ala.1986). Prejudice on the part of a judge is not presumed. Hartman v. Board of Trustees, 436 So.2d 837 (Ala.1983); Duncan v. Sherrill, 341 So.2d 946 (Ala.1977); Ex parte Rives, 511 So.2d 514, 517 (Ala.Civ.App.1986). "`[T]he law will not suppose a possibility of bias or favor in a judge who is already sworn to administer impartial justice and whose authority greatly depends upon that presumption and idea.'" Ex parte Balogun, 516 So.2d 606, 609 (Ala.1987), quoting Fulton v. Longshore, 156 Ala. 611, 46 So. 989 (1908). Any disqualifying prejudice or bias as to a party must be of a personal nature and must stem from an extrajudicial source. Hartman v. Board of Trustees of the University of Alabama, 436 So.2d 837 (Ala.1983); Reach v. Reach, 378 So.2d 1115 (Ala. Civ.App.1979). Thus,
"`"`[T]he disqualifying prejudice of a judge does not necessarily comprehend every bias, partiality, or prejudice which he may entertain with reference to the case, but must be of a character, calculated to impair seriously his impartiality and sway his judgment, and must be strong enough to overthrow the presumption of his integrity.'"
"`Ross v. Luton, 456 So.2d [249] at 254 [(Ala.1984)], quoting Duncan v. Sherrill, 341 So.2d 946, 947 (Ala.1977), quoting 48 C.J.S. Judges § 82(b).'
"Ex parte Melof, 553 So.2d 554, 557 (Ala.1989). See also Ex parte Cotton, 638 So.2d 870 (Ala.1994)."
Ex parte Knotts, 716 So.2d 262, 263-64 (Ala.Crim.App.1998). In his motion, the appellant argued only that the circuit judge "informed counsel that he personally knew the victim better than the trial judge knew the victim." (C.R. 444.) That bare allegation was not sufficient to establish a reasonable basis for questioning the judge's impartiality. Therefore, the circuit court did not err when it did not rule on the appellant's recusal motion.

C.
Third, the appellant contends that the circuit court erred because it did not rule on his motion to preserve documents and physical evidence. However, in his motion, he made only bare allegations as to the existence of documents and physical evidence and as to the possibility of destruction of such documents and evidence. Therefore, he did not establish the need for an order for preservation, and the circuit court did not err when it did not rule on the motion.

D.
Fourth, the appellant contends that the circuit court improperly adopted the State's proposed order.
"`While the practice of adopting the State's proposed findings of fact and conclusions of law is subject to criticism, the general rule is that even when the court adopts proposed findings and conclusions verbatim, the findings are those of the court and may be reversed only if clearly erroneous. Anderson v. City of Bessemer, N.C., 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); Hubbard v. State, 584 So.2d 895 (Ala.Cr.App.1991); Weeks v. State, 568 So.2d 864 (Ala.Cr. *528 App.1989), cert. denied, 498 U.S. 882, 111 S.Ct. 230, 112 L.Ed.2d 184 (1990); Morrison v. State, 551 So.2d 435 (Ala. Cr.App.1989), cert. denied, 495 U.S. 911, 110 S.Ct. 1938, 109 L.Ed.2d 301 (1990).'
"Wright v. State, 593 So.2d 111, 117-18 (Ala.Cr.App.1991), cert. denied, [506] U.S. [844], 113 S.Ct. 132, 121 L.Ed.2d 86 (1992)."
Holladay v. State, 629 So.2d 673, 687-88 (Ala.Crim.App.1992). The record does not indicate that the circuit court's findings are clearly erroneous. In fact, it supports those findings. Therefore, the appellant's argument is without merit.

IX.
Finally, the appellant argues that the circuit court should have granted his discovery requests. Specifically, he contends that the information requested was relevant to his ineffective-assistance and Brady claims. With regard to discovery in Rule 32 proceedings, the Alabama Supreme Court has held:
"We agree with the Court of Criminal Appeals that `good cause' is the appropriate standard by which to judge postconviction discovery motions. In fact, other courts have adopted a similar `good-cause' or `good-reason' standard for the postconviction discovery process. See [State v.] Marshall[, 148 N.J. 89, 690 A.2d 1 (1997)], supra; State v. Lewis, 656 So.2d 1248 (Fla.1994); People ex rel. Daley v. Fitzgerald, 123 Ill.2d 175, 121 Ill.Dec. 937, 526 N.E.2d 131 (1988). As noted by the Illinois Supreme Court, the good-cause standard guards against potential abuse of the postconviction discovery process. See Fitzgerald, supra, 123 Ill.2d at 183, 121 Ill.Dec. 937, 526 N.E.2d at 135. We also agree that New Jersey's Marshall case provides a good working framework for reviewing discovery motions and orders in capital cases. In addition, we are bound by our own rule that `an evidentiary hearing must be held on a [petition for postconviction relief] which is meritorious on its face, i.e., one which contains matters and allegations (such as ineffective assistance of counsel) which, if true, entitle the petitioner to relief.' Ex parte Boatwright, 471 So.2d 1257, 1258 (Ala.1985).
"We emphasize that this holding  that postconviction discovery motions are to be judged by a good-cause standard  does not automatically allow discovery under Rule 32, Ala. R.Crim. P., and that it does not expand the discovery procedures within Rule 32.4. Accord Lewis, supra, 656 So.2d at 1250, wherein the Florida Supreme Court stated that the good-cause standard did not affect Florida's rules relating to postconviction procedure, which are similar to ours. By adopting this standard, we are only recognizing that a trial court, upon a petitioner's showing of good cause, may exercise its inherent authority to order discovery in a proceeding for postconviction relief. In addition, we caution that postconviction discovery does not provide a petitioner with a right to `fish' through official files and that it `is not a device for investigating possible claims, but a means of vindicating actual claims.' People v. Gonzalez, 51 Cal.3d 1179, 1260, 800 P.2d 1159, 1206, 275 Cal.Rptr. 729, 776 (1990), cert. denied, 502 U.S. 835, 112 S.Ct. 117, 116 L.Ed.2d 85 (1991). Instead, in order to obtain discovery, a petitioner must allege facts that, if proved, would entitle him to relief. Cf. Porter v. Wainwright, 805 F.2d 930, 933 (11th Cir.1986) (`a hearing [on a habeas corpus petition] is not required unless the petitioner alleges facts which, if proved, would entitle him to federal habeas relief'), cert. denied, 482 U.S. 918, 919, 107 S.Ct. 3195, *529 96 L.Ed.2d 682 (1987). Furthermore, a petitioner seeking postconviction discovery also must meet the requirements of Rule 32.6(b), Ala. R.Crim. P., which states:
"`The petition must contain a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds. A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceedings.'"
Ex parte Land, 775 So.2d 847, 852-53 (Ala. 2000) (footnote omitted).
In this case, the appellant did not show good cause why the circuit court should have granted the motions. For the reasons set forth herein, the appellant did not allege sufficient facts that, if true, would have established that he was entitled to relief on his ineffective-assistance and Brady claims. In fact, it appears that he was attempting to fish through the requested information to find support for his claims. Therefore, the circuit court did not err in this regard.
For the above-stated reasons, we affirm the circuit court's judgment.
AFFIRMED.
McMILLAN, P.J., and WISE, J., concur; SHAW, J., concurs in part and concurs in the result in part, with opinion; COBB, J., dissents, with opinion.
SHAW, Judge, concurring in part and concurring in the result in part.
I concur in all aspects of the majority opinion with the exception of the majority's analysis in Part IV equating the review under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and the plain-error standard of review. See my special writing in Taylor v. State, [Ms. CR-02-0706, August 27, 2004] ___ So.2d ___ (Ala.Crim.App.2004) (Shaw, J., concurring in part and dissenting in part). I specifically note that the facts and circumstances in this case are, in my view, distinguishable from those in Rhone v. State, 900 So.2d 443 (Ala.Crim.App.2004), and that, therefore, I agree with the majority's conclusion in Part VIII.A. of the opinion that the circuit court did not abuse its discretion in refusing to accept Woods's second amendment to his petition.
COBB, Judge, dissenting.
I disagree with the majority's affirmance of the trial court's summary dismissal of Fredrick Woods's Rule 32, Ala. R.Crim. P., petition. First, for the reasons expressed in my special writing in Taylor v. State, [Ms. CR-02-0706, Aug. 27, 2004] ___ So.2d ___ (Ala.Crim.App.2004)(Cobb, J., dissenting), I disagree with the majority's holdings throughout the opinion that a finding of no plain error on direct appeal precludes a finding of prejudice under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
Second, I disagree with what I perceive to be the majority's improper attempt to impose a burden of proof at the pleading stage of the proceeding. For example, in Part IV.B. of the opinion, after the majority combines several claims alleging ineffective assistance of counsel in a cursory analysis, it states that the claims are not supported by facts and "[t]herefore, he has not established that his attorneys' performance was deficient and that that deficient performance prejudiced him in these instances." 957 So.2d at 514. In Part V of the opinion, addressing the claim that trial counsel's performance at the penalty phase was ineffective, the majority notes that "the appellant bears a heavy burden of proof when he claims that his counsel rendered ineffective assistance." 957 *530 So.2d at 523. Although the trial court dismissed this claim as insufficiently pleaded, the majority here adopts the trial court's findings but additionally stated that "the appellant has not established," 957 So.2d at 523, that he is entitled to relief on the claims. The Alabama Supreme Court in Ex parte Lucas, 865 So.2d 418, 421 (Ala.2002), and this Court in Borden v. State, 891 So.2d 393 (Ala.Crim.App.2002), have previously held that a postconviction petitioner's only burden at the initial pleading stage is to plead sufficient facts. In Ex parte Lucas, the Supreme Court said, "Because the proceedings involving Lucas's petition never reached the `proof' stage, we must consider whether his `pleading,' i.e., his twice-amended petition, failed, in the words of the Court of Criminal Appeals, `to establish a facially valid ineffective assistance of counsel claim under Strickland v. Washington.'" 865 So.2d at 421. I am concerned that the majority's use of the term "establish" implies a burden to prove in addition to the burden to plead, thereby increasing the burden set forth in Rule 32.3, Ala. R.Crim. P. I am also concerned that this imprecise language might create additional problems when the case reaches its inevitable next move into federal habeas proceedings, because a federal court looks to the state court's decisions to determine which claims were precluded and which claims were addressed on the merits. To hold that a petitioner failed to "establish" a claim implies that the claim was addressed on the merits, when in this case, the claims clearly were not addressed on the merits.
Third, I disagree with the majority's determination in Part VIII.A. of the opinion that the trial court did not abuse its discretion when it refused to permit Woods to file his second amended petition. Rule 32.7(b), Ala. R.Crim. P., provides that amendments to petitions may be permitted "prior to the entry of judgment," and Rule 32.7(d), Ala. R.Crim. P., states, "Leave to amend shall be freely granted." While the decision to grant or deny an amendment is discretionary, that discretion is not unfettered. In fact, Alabama courts have often stated that amendments should be freely granted and that disallowance of an amendment should be based on some valid ground such as actual prejudice or undue delay. E.g., Coral v. State, 900 So.2d 1274, 1283 (Ala.Crim.App.2004); Miles v. State, 845 So.2d 830, 832-33 (Ala.Crim.App.2001); Cochran v. State, 548 So.2d 1062, 1075 (Ala.Crim.App.1989); and cases cited therein. See also Ex parte Allen, 825 So.2d 271, 273 (Ala.2002) (noting that although leave to amend a Rule 32 petition is within the discretion of the circuit court, pursuant to Rule 32.7(b), "amendments are allowed at any time `prior to the entry of judgment'").
The majority relies on Cochran v. State, supra, cited in Coral v. State, supra, to support its determination that the trial court did not abuse its discretion when it struck the second amended petition. For the reasons stated in Judge Shaw's dissent, which I joined, in Rhone v. State, 900 So.2d 443 (Ala.Crim.App.2004), I believe that the majority's reliance on Cochran in this case is misplaced. After analyzing much of the law cited in Cochran, Judge Shaw stated:
"The very structure of Rule 32 itself indicates that the intent of the rule was to encourage petitioners to litigate all of their claims in the first petition filed. The rule requires specificity in pleading, Rule 32.3 and Rule 32.6(b); with respect to summary disposition, it specifically provides, as noted above, that a circuit court `may' grant leave to amend a petition that is not sufficiently specific or fails to state a claim, but it directs that such leave `shall be freely granted,' Rule 32.7(d); it precludes successive petitions, *531 Rule 32.2(b); and, most detrimental to Rhone, it precludes any claim of ineffective assistance of counsel raised in a second or subsequent petition, Rule 32.2(d)."
Rhone at 454 (Shaw, J., concurring in part and dissenting in part).
Judge Shaw further noted that because Rhone's counsel exercised reasonable diligence in filing the amendment and because there was no indication that allowing the amendment would have caused undue delay of the proceedings or undue prejudice to the State, the trial court abused its discretion in denying the amendment. I believe the same result is required in this case, for the same reasons expressed in the dissent in Rhone, and for the additional reason that this is a capital murder case in which a death sentence has been imposed. A man's life is at stake.
Woods was convicted of capital murder on August 14, 1997, and on September 4, 1997, he was sentenced to death. This Court affirmed Woods's conviction and sentence on December 10, 1999, and the Alabama Supreme Court affirmed this Court's judgment on January 12, 2001. Woods filed his Rule 32 petition on July 25, 2002. On September 27, 2002, the State filed its answer, claiming that many of the claims were procedurally barred, meritless, or not pleaded with the required specificity. On November 15, 2002, Woods filed his first amended petition. A status conference was held on December 19, 2002. The State argued that many of claims were due to be dismissed because they lacked specificity and detail. For example, while discussing the alleged lack of specificity with regard to an expert-assistance claim, the trial court agreed that having the name of the expert would be helpful, and the State's attorney responded, "I think that is why it takes these things so long to come back around when you have a third, a fourth and a fifth amended petition. If I knew who their expert was I could call him on the phone. . . ." (R. 166.) The trial court indicated that it would dismiss claims that were precluded and would hold a hearing on the remaining cognizable claims. The court then requested that the parties submit proposed orders addressing the claims raised in the first amended petition. The court stated that, after they resolved the motion to dismiss, they would discuss Woods's previously filed requests for discovery, even though that might delay the hearing on the petition. (R. 116.) The proposed orders were due to be filed on January 31, 2003, but, according to the State, the parties agreed to extend the date to February 7, 2003. (C. 657.) On January 24, 2003, Woods filed a second amended petition to address the State's concerns regarding specificity. The petition added no new claims.
On January 28, 2003, the State filed a motion to dismiss the second amended petition. In support of its motion to dismiss, the State argued:
"This second amended petition is 81 pages longer than Woods's first amended petition. In addition, the section numbers, page numbers and paragraph numbers in Woods's second amended petition are completely different than those in his first amended petition. Requiring the State to change its proposed order to correspond to Woods's second amended petition at this late date would work a tremendous hardship on the State's counsel."
(C. 657-58.)(Emphasis added.)
The State further noted in the motion that, after the trial court had considered the proposed orders filed by the parties, the court, in its discretion, could allow Woods to amend his petition. (C. 658.) The trial court granted the State's motion *532 to strike and ordered the parties to submit proposed orders addressing the claims in Woods's first amended petition. On February 7, 2003, the State filed its proposed order; the proposed order dismissed all claims in the first amended petition. Woods thereafter filed his proposed order. On July 2, 2003, the court adopted the State's order as its own and dismissed Woods's first amended petition in its entirety.
The trial court here abused its discretion in dismissing the second amended petition. In light of the fact that amendments are to be freely allowed in the interests of justice, the very spirit of the Alabama Rules of Criminal Procedure demanded that Woods's second amended petition be granted. First, this is not a case that had been languishing after the initial Rule 32 petition had been filed. To the contrary, the second amended petition was filed just six months after the initial petition was filed. Certainly lack of diligence or an intent to delay the proceedings could not be charged against Woods with regard to his filing of pleadings in this case. This, alone, sets Woods's case apart from the many cases in which this Court has held that the trial court did not abuse its discretion when it declined to allow an amended petition. E.g., Coral v. State, 900 So.2d 1274 (Ala.Crim.App.2004)(amendment filed two months after hearing on motion for partial dismissal and after trial court had dismissed all but two claims); McWilliams v. State, 897 So.2d 437 (Ala.Crim.App.2004)(motions to amend petition for a third time were filed three years after initial petition was filed, and two months (first motion) and nine months (second motion) after evidentiary hearing was held; trial court noted that amendments appeared to be part of plan to delay proceedings); Neelley v. State, 642 So.2d 494 (Ala.Crim.App.1993)(motion for leave to amend filed seven months after evidentiary hearing).
Second, Woods filed the second amended petition in an attempt to satisfy the concerns expressed by the State and the trial court regarding the perceived lack of specificity in several of the claims. Although Woods argued at the status conference that the State was requiring more specificity than was required in Rule 32, Woods attempted to accommodate the State's demands for more specificity by filing a second amended petition.
Third, allowing the second amended petition would have resulted in no undue delay and no undue prejudice to the State. As noted above, the proceedings had not been languishing in the circuit court for years, as these cases sometimes do. Allowing an additional 30 days for the State to respond would not have constituted an undue delay in the proceedings in this capital-murder case. As for the State's assertion that it would have to "change its proposed order to correspond to Woods's second amended petition" and that the change would "work a tremendous hardship on the State's counsel," I find this assertion to be an exaggeration, to say the least. If this had been Woods's fourth or fifth amended petition and it contained new claims, or if it was filed after an evidentiary hearing had been held, then, perhaps, I would agree that requiring a response to the amended petition would be unduly prejudicial to the State. However, particularly in light of the fact that Woods's first amended petition was summarily dismissed without an evidentiary hearing  including all of the claims of ineffective assistance of counsel  with many of the claims being dismissed for lack of specificity, I am not at all persuaded by the State's claims of alleged hardship. By comparison, Woods has suffered the hardship of being denied a hearing in State *533 court on all of his postconviction claims. In a case involving the death penalty, I believe that more serious efforts to consider the viable claims raised in Rule 32 petition should be made, lest postconviction review of capital cases in Alabama be reduced to a mockery of justice.
Though the trial court has broad discretion in deciding whether to allow an amendment to a Rule 32 petition, under the facts of this case, I am convinced that the trial court abused its discretion and denied Woods the review of his claims to which Rule 32 entitles him. Therefore, I believe that the judgment in this cause should be reversed and remanded, that the second amended petition should be allowed, and that the proceedings should continue from that point. A case in which the death penalty has been imposed deserves more review than this case has received; it deserves the type of review the spirit of Rule 32 allows.
For the foregoing reasons, I dissent.
NOTES
[1] We note that, when the Alabama Supreme Court reviewed this court's decision in Thomas, it did not disturb this holding. Although that court conducted a preserved error review with respect to the ineffective-assistance claim Thomas raised before that court, it specifically noted that "neither the Court of Criminal Appeals nor this Court even mentioned the [underlying substantive] issue . . . in the respective opinions at that stage." Ex parte Thomas, 766 So.2d at 979. Therefore, that case did not abrogate this court's prior procedure, which was enunciated in Thomas. Instead, it was limited to ineffective-assistance claims based on underlying substantive claims that had not been specifically addressed and rejected by this court and/or the Alabama Supreme Court on direct appeal.
[2] We further note that, as recently as May 28, 2004, this court followed this same rationale in Coral v. State, 900 So.2d 1274, 1286-87 (Ala.Crim.App.2004), when we held:

"Coral also argues that counsel failed to object to inadmissible statements in the presentence report that he alleges resulted in prejudice to him.
". . . .
". . . The substantive claim was addressed by the Alabama Supreme Court on direct appeal and determined adversely to Coral. Coral [v. State], 628 So.2d [988] at 992 [Ala. Crim.App.1992]. Therefore, Coral can show no prejudice. The circuit court correctly denied relief on this claim."
(Emphasis added.)
[3] We finally note that Thomas and Williams do not stand for the proposition that a petitioner in a Rule 32 proceeding cannot establish prejudice under Strickland simply because this court and/or the Alabama Supreme Court conducted a plain error review of the record on direct appeal. See Ex parte Thomas, supra.